JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant Demetrius Gooden ("defendant") appeals from the judgment of the trial court which found him guilty of rape, gross sexual imposition and intimidation of E.H. ("the victim"). For the reasons set forth below, we affirm in part, vacate in part, reverse in part, and remand for resentencing.
 {¶ 2} The following evidence was presented during the defendant's jury trial.
 {¶ 3} The victim's mother testified that she lived in her mother's duplex house, along with several other family members. She stated that some relatives slept downstairs, where the living and dining rooms served as bedrooms; some lived upstairs and the defendant, a long-time family friend, slept with his girlfriend on the third floor.
 {¶ 4} The victim was a sixteen-year old learning disabled girl, who suffered from a severe speech impediment which made it difficult for people to understand her. She testified that on the evening of February 3, 2000, she returned home after attending a basketball game with her former teacher and friend, Ms. Beachum. When she arrived home, she hung up her coat and laid down on the mattress that was in the dining room, instead of going to sleep in her bedroom on the second floor. The defendant was asleep on the couch in the same room. The victim stated that she awoke when the defendant tried to take off her pants. She told the defendant to leave her alone, but he ignored her. He proceeded to take off her underwear and vaginally rape her, despite her pleas to be left alone. The victim further testified that the defendant restrained her arms to prevent her from resisting him. She stated that when he finished, the defendant told the victim not tell to anyone about what happened, and then laid down on the couch. The victim stated that she did not tell anyone about the rape that night or the next day because she was afraid. The victim further testified that a few days after the rape, she received a phone call from the defendant in which he cursed at her and accused her of lying about the incident.
 {¶ 5} Ms. Beachum testified that she taught the victim and other special needs children for three years in middle school. She stated that on Thursday, February 3, 2000, she had taken the victim and several other people to see a professional basketball game. When it was over, Ms. Beachum drove the victim home at approximately 11:00 p.m. Ms. Beachum stated that the next day, she did not see the victim at school, which was quite unusual for the victim. The following Monday, Ms. Beachum saw the victim early in the morning, sitting in the stairwell, crumpled up, balled over and whining. She stated that the victim looked very tired. The victim eventually told Ms. Beachum about the rape. Because the administrative offices were closed for the day, Ms. Beachum did not report the rape to school authorities. The next day, the victim was still upset and crying and suffering from pain. Ms. Beachum attempted to contact the principal, who was unavailable that day. Ms. Beachum stated that because the victim was still visibly upset and afraid to walk home, she gave the victim a ride. On Wednesday, Ms. Beachum met with the principal, who contacted the police and the Department of Children and Family Services.
 {¶ 6} Officer Lisa Cornell of the Cleveland Police Department responded to the call and met with the victim. She testified that the victim appeared to be very quiet and withdrawn that day. Officer Cornell further testified regarding the results of her ensuing investigation, including the fact that the defendant was a suspect in the case.
 {¶ 7} The defendant presented several alibi witnesses, all of whom stated that on February 3, 2000, the defendant was no longer living at the victim's grandmother's house. Each stated that the defendant had moved back in with his mother approximately a month prior. The defendant's brother and mother both testified that on the night in question, they remembered seeing the defendant at home at 9:45, after the defendant returned home from helping his friend, Mr. Bowen, remodel his house. Mr. Bowen corroborated that testimony, but stated that he dropped off the defendant at his mother's house between 10:00 and 10:30 that evening. The defendant also testified in his defense that he had been working with Mr. Bowen that evening and returned to his mother's house at approximately 9:45. Lastly, the defense presented the testimony of Ms. Pickett, the defendant's girlfriend, who also stated that the defendant had, in fact, moved back to his mother's on January 2, 2000.
 {¶ 8} The jury found the defendant guilty of rape, two counts of gross sexual imposition and intimidation. The trial court found the defendant to be a habitual sexual offender and sentenced the defendant to five years for rape, eighteen months on the gross sexual imposition counts, and one year on the intimidation count, each to run concurrently.
 {¶ 9} It is from this ruling that the defendant now appeals, asserting sixteen assignments of error which we address out of order and together, where appropriate.
 {¶ 10} "I. The trial court erred in violation of the United States Constitution's Fifth, Sixth and Fourteenth Amendments when it failed to dismiss the instant case because of the state's delay in advising Mr. Gooden of the charges against him."
 {¶ 11} In his first assignment of error, the defendant maintains that he was denied due process of law when the trial court denied his motion to dismiss based on the preindictment delay. Specifically, the defendant contends that pre- and post-indictment delays raise identical due process concerns. It follows, he urges, that this court should applyBarker v. Wingo (1972), 407 U.S. 514 and Doggett v. United States
(1992), 505 U.S. 647, 651 to determine if he was prejudiced by the delay between the date of the alleged rape and the date on which he was indicted. We note, however, that the test regarding preindictment delay is well-settled.
 {¶ 12} The Supreme Court of Ohio recently reiterated the test for preindictment delay in State v. Walls, 96 Ohio St.3d 437, 2002-Ohio-5059. There, the court stated:
 {¶ 13} "To warrant dismissal on the basis of preindictment delay, a defendant must present evidence establishing substantial prejudice. Once the defendant fulfills that burden, the state has the burden of producing evidence of a justifiable reason for the delay. State v.Whiting (1998), 84 Ohio St.3d 215, 217, 702 N.E.2d 1199. Thus, `the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.' United States v. Lovasco (1977), 431 U.S. 783,790, 97 S.Ct. 2044."
 {¶ 14} We are first faced with the task of determining whether the defendant demonstrated actual prejudice. We find that he did not. In his brief, the defendant merely alleges that the preindictment delay in this case was presumptively prejudicial. He does not allege any particular prejudice as a result of the state's delay in bringing the charges against him, such as being prevented from building a defense. We cannot find that the defendant demonstrated actual prejudice as a result of the state's delay in bringing the charges against him, and therefore find that the trial court did not err. This assignment of error is without merit.
 {¶ 15} "II. The evidence was insufficient to sustain convictions for gross sexual imposition as found by the jury in counts two and three."
 {¶ 16} "III. The evidence was insufficient to sustain a conviction for intimidation, as found by the jury in count four."
 {¶ 17} Having a common basis in law, we address together the defendant's second and third assignments of error.
 {¶ 18} The defendant contends that the evidence was insufficient as a matter of law to sustain guilty verdicts for the offenses of gross sexual imposition and intimidation. We agree with the defendant and vacate his convictions for intimidation and gross sexual imposition.
 {¶ 19} When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307. Thus, a reviewing court will not overturn a conviction for insufficiency of the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001),90 Ohio St.3d 460. Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact, who observed the witness in person. State v. Antill (1964),176 Ohio St. 61; State v. DeHass (1967), 10 Ohio St.2d 230.
A. Gross Sexual Imposition
 {¶ 20} Gross Sexual Imposition under R.C. 2907.05 provides, in relevant part:
 {¶ 21} "(A) No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:
 {¶ 22} "The offender purposely compels the other person * * * to submit by force or threat of force."
 {¶ 23} "Sexual Contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast for the purpose of sexually arousing or gratifying either person. R.C. 2907.01(B).
 {¶ 24} In this case, the victim testified that the defendant pulled off her pants and her underwear, and then spread her legs apart with his hands prior to vaginally raping her. There is no evidence of how the defendant removed the victim's pants or underwear. Specifically, the evidence does not demonstrate that the defendant touched an erogenous zone when he removed her pants and underwear. Further, the evidence does not demonstrate that the defendant touched an erogenous zone when he spread her legs apart. The victim did not testify that the defendant touched her thighs; in fact, the defendant could have spread her legs with his hands at her knees or lower legs. We therefore find that there was insufficient evidence to support two gross sexual imposition convictions and vacate those convictions.
B. Intimidation
 {¶ 25} Intimidation under R.C. 2921.04(B) provides that "no person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges * * *" [Emphasis added.]
 {¶ 26} A review of the record reveals that the victim testified that after the defendant raped her, he told her not to tell anybody about what happened and then went to bed on the couch in the room where the victim was sleeping. The victim further testified that she did not tell anyone because she was scared and because she was afraid that no one would believe her.
 {¶ 27} The essence of an intimidation offense is the use of an unlawful threat of harm in addition to an attempt to influence or intimidate or hinder the victim of a crime in the filing or prosecution of a crime. Despite the victim's fear of the defendant, we cannot say that the defendant used any force or an unlawful threat of harm to specifically influence, intimidate or hinder the victim from filing criminal charges.
 {¶ 28} The state contends that the defendant's phone call to the victim days after the rape occurred is also sufficient evidence of intimidation. We disagree. The appellant was indicted for intimidation that allegedly occurred on February 2, 2000, the night of the rape. If the state had so wished, it could have indicted the defendant on another charge of intimidation or amended the original indictment to include the date of the defendant's phone call. It did not do so, and therefore the defendant's subsequent phone call is not evidence supporting an intimidation charge on the night of the rape. We therefore sustain the defendant's third assignment of error and vacate the defendant's conviction for intimidation and gross sexual imposition.
 {¶ 29} "VIII. The trial court erred when it failed to dismiss the gross sexual imposition convictions as being allied to the rape conviction and thus violated Mr. Gooden's rights under R.C. 2941.25
(allied offenses) and the double jeopardy clause of Art. I., Sec. 10 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution."
 {¶ 30} "XII. The trial court erred in imposing maximum sentences for the offenses of gross sexual imposition."
 {¶ 31} These assignments are hereby rendered moot.
 {¶ 32} "IV. The trial court erred when it admitted Edna Henderson's hearsay statements to Ms. Beachum and Officer Cornell." [As amended.]
 {¶ 33} In his fourth assignment of error, the defendant contends that the trial court erred in not excluding instances of alleged hearsay. Specifically, the defendant argues that the trial court erred when it allowed Ms. Beachum and Officer Cornell to testify regarding the victim's statements to them several days after the rape. We disagree.
 {¶ 34} The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173. To find an abuse of discretion, we must find that the trial court's decision was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 35} Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is not admissible unless it falls within one of the exceptions enumerated in the rules, such as the excited utterance exception. An excited utterance is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. Evid.R. 803.
 {¶ 36} In determining if a statement qualifies as an excited utterance, we note that although the passage of time is relevant, there is no per se amount of time after which a statement can no longer be considered an excited utterance. State v. Taylor (1993), 66 Ohio St.3d 295. While the passage of time is relevant, it is not dispositive. Id. However, the courts in Ohio have relaxed the excited utterance rule when faced with child declarants who are victims of sexual abuse. In this regard, the Supreme Court of Ohio stated:
 {¶ 37} "In the cases of statements made by children who say they were sexually assaulted, we have upheld the admission of those statements even when made after a substantial lapse of time, but in those cases we have done so because we recognize that children are likely to remain in a state of nervous excitement longer than would an adult. * * * This trend of liberalizing the requirements for an excited utterance when applied to young children who are the victims of sexual assault is also based on the recognition of their limited reflective powers. Inability to fully reflect makes it likely that the statements are trustworthy." State v.Taylor, supra.
 {¶ 38} The Supreme Court has also stated, in regard to excited utterances:
 {¶ 39} "There may be instances in which a decision * * * will appear to a reviewing court almost as reasonable as a decision to admit it; and vice versa. We certainly do not believe that the decision of the trial judge in such an instance should be disturbed."
 {¶ 40} "[T]he trial judge, in determining whether this declaration was admissible, necessarily had to decide certain questions of fact. If his decision of those questions of fact, as reflected in his ruling on the admissibility of this declaration, was a reasonable decision, an appellate court should not disturb it. In other words, we believe that the decision of the trial judge, in determining whether or not a declaration should be admissible under the spontaneous exclamations exception to the hearsay rule, should be sustained where such decision appears to be a reasonable one, even though the reviewing court, if sitting as a trial court, would have made a different decision. * * *" State v. Taylor, supra quoting Potter v. Baker (1955), 162 Ohio St. 488.
 {¶ 41} In this case, Ms. Beachum testified that "[the victim] just said somebody raped her." (T. 321). Testimony revealed that despite the fact that the victim was sixteen, she was developmentally delayed and had significantly substandard verbal skills. The fact that the victim told Ms. Beachum about the rape four days later does not automatically disqualify her testimony as inadmissible hearsay. In fact, the state laid a proper foundation indicating that the victim was still under the stress of the rape; testimony revealed that the victim was crumpled up, balled over and whining in the stairwell at school that day.
 {¶ 42} Further, we note that even if this testimony was not considered an excited utterance exception, prejudice to the defendant would be absent because, as this court has noted:
 {¶ 43} "the pertinent testimony elicited was merely a recitation of events already described by the complainant. The jury was free to assess [the victim's] credibility, and although the elicited hearsay testimony gave more weight to her account, its introduction cannot be said to be either unreasonable, arbitrary or unconscionable. Furthermore, the testimony of the complainant alone was sufficient enough to convict. As a result, the admission of such testimony does not rise to the level of abuse of discretion." State v. Kebe (Nov. 12, 1998), Cuyahoga App. No. 73398.
 {¶ 44} In this case, the victim's testimony was consistent with the statement made by Ms. Beachum. Her testimony merely added to the credibility of the victim. There is no indication that the victim's testimony alone would have been insufficient to convict the defendant. We find that the trial court's decision to allow testimony from Ms. Beachum that the victim stated she was raped was a reasonable one. We therefore overrule this assignment of error.
 {¶ 45} We will address the propriety of the trial court's decision to allow Officer Cornell's testimony in the following assignment of error.
 {¶ 46} "V. The trial court plainly erred when it permitted officer Cornell to effectively give her personal opinion regarding Mr. Gooden's guilt.
 {¶ 47} The defendant urges this court to reverse the defendant's convictions and remand the case for new trial because, he alleges, his constitutional rights to a trial by jury were violated when Officer Cornell testified.
 {¶ 48} We note that the defendant failed to object to Officer Cornell's statements at trial and therefore has waived all but plain error. State v. Slagle (1992), 65 Ohio St.3d 597. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland (1990),50 Ohio St.3d 58; State v. Phillips (1995), 74 Ohio St.3d 72, 83.
 {¶ 49} The defendant maintains that Officer Cornell effectively communicated to the jury that her investigation revealed that a crime had been committed and that the defendant was the perpetrator. The defendant alleges that this testimony usurped the jury's role as factfinder, was improper, prejudicial and caused reversible error, relying on State v.Boston (1989), 46 Ohio St.3d 108. In his fourth assignment of error, the defendant also urges this court to find portions of Officer Cornell's testimony inadmissible as hearsay.
 {¶ 50} We reject the defendant's characterization of Officer Cornell's testimony. A careful reading of the record indicates that the officer testified that during the course of her investigation a crime had occurred. She further testified that the defendant was a suspect. Officer Cornell never testified that the defendant was the perpetrator, nor that in her opinion, the defendant was the perpetrator of the crime. The officer merely testified regarding what her investigation revealed.
 {¶ 51} Further, the defendant's reliance on State v. Boston is misplaced. In that case, the Supreme Court of Ohio held that an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. In this case, Officer Cornell never testified as to the veracity of the victim's statements; rather, as we stated above, her testimony consisted of reporting what her investigation revealed. We further disagree with the defendant's contention that Officer Cornell's testimony was inadmissible hearsay because her testimony included information from the result of her investigation, such as the defendant being named as a suspect. As such, we overrule this assignment of error.
 {¶ 52} "VI. The trial court plainly erred when it permitted the state to introduce evidence of Mr. Gooden's allegedly bad character."
 {¶ 53} The defendant failed to object to the testimony at issue and therefore has waived all but plain error. State v. Slagle, supra.
 {¶ 54} Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. The defendant complains that the cross-examination of defense witness, Francine Pickett, was improper because the trial court allowed testimony which suggested that the defendant had a propensity for preying on young women.
 {¶ 55} On direct examination, defense counsel asked Ms. Pickett her age and whether she lived with the defendant. The defendant opened the door for the state to inquire further regarding Ms. Pickett's relationship with the defendant and her young age. Further, the state was entitled to impeach the witness by establishing that Ms. Pickett was biased, prejudiced, interested or had a motive to misrepresent. Evid.R. 616(A). This assignment of error has no merit and is hereby overruled.
 {¶ 56} "VII. The verdicts were against the manifest weight of the evidence."
 {¶ 57} In his seventh assignment of error, the appellant contends that his convictions were against the manifest weight of the evidence. We need not address the defendant's convictions for intimidation or gross sexual imposition having already vacated them in a previous assignment of error.
 {¶ 58} In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, citingTibbs v. Florida (1982), 457 U.S. 31. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison
(1985), 23 Ohio App.3d 10. The credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. Statev. Antill, supra; State v. DeHass, supra.
 {¶ 59} R.C. 2907.02(A)(2) provides that no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
 {¶ 60} In this case, the victim's mother testified that at the time of the alleged rape, the defendant was living with her, the victim and their family. The victim testified that when she returned home from a basketball game with her former teacher, she hung up her coat and decided to sleep in the living room, which she did fairly often. She laid down on the mattress, after which she fell asleep. The victim testified that she woke up as the defendant was pulling off her pants. She told him to leave her alone, but he did not stop. He proceeded to take off her underwear, despite her pleas to be left alone. She stated that the defendant then inserted his penis into her vagina, while holding her hands above her head to prevent her from pushing him away.
 {¶ 61} The defendant presented testimony to support his alibi that he was not at the victim's house on the night of the rape. However, each defense witness' credibility was called into question on cross-examination. For instance, the defendant's mother testified that she was sure that she learned of the charges against her son on January 10, 2000, even after the state's attorney reminded her that charges were not filed until February 9, 2000. Further, the defendant's brother testified that he specifically remembered his brother's whereabouts on the evening in question and that he never talked to his brother about his brother's alibi. Later in his testimony, the defendant's brother admitted that he had discussed being an alibi witness for the defendant after all. Mr. Bowen's credibility was also called into question when, at the end of his testimony, he admitted that it was difficult to remember the exact time frame of events. Lastly, Ms. Pickett's credibility was called into question when she admitted on cross-examination that she loved the defendant and wanted to help him by testifying.
 {¶ 62} In light of the victim's testimony and other evidence produced on behalf of the state, the diminished credibility of the defendant's witnesses during cross-examination, and the conflicting testimony regarding where the defendant was living at the time of the rape, we cannot say that the jury lost its way and created a manifest miscarriage of justice in convicting the defendant of rape. We therefore overrule this assignment of error.
 {¶ 63} "IX. The appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."
 {¶ 64} In establishing a claim of ineffective assistance of trial counsel, it is clear that a defendant must make a two-part showing:
 {¶ 65} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless the defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."Strickland v. Washington (1986), 466 U.S. 668, 687. Accord State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
 {¶ 66} The Strickland Court also cautioned courts examining the issue that:
 {¶ 67} "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac (1982), 456 U.S. 107, 133, 134. * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.466 U.S. at 689. See, also, State v. Frazier (1991), 61 Ohio St.3d 247, 253. In addition, absent demonstration of prejudice, this court must indulge in a strong presumption that the failure to object at trial constitutes sound strategy: Strickland, supra; State v. Moore (1994), 97 Ohio App.3d 137. See, also, State v. Catlin (1990), 56 Ohio App.3d 75.
 {¶ 68} The defendant contends that he was denied effective assistance of counsel as a result of trial counsel's failure to object to the admission of alleged hearsay, improper opinion testimony, improper character evidence and for failing to raise the issue of allied offenses after the verdict was returned. We disagree.
 {¶ 69} We determined in the above assignments of error, that the alleged hearsay, opinion testimony and character evidence about which the defendant complains were admissible. Further, we vacated the defendant's convictions for gross sexual imposition, which the defendant alleges would have been an allied offense to his rape conviction. We therefore overrule this assignment of error.
 {¶ 70} "X. The failure to include the written jury instructions in the record deprived Mr. Gooden of his right to due process by impairing his right to an effective first appeal as of right."
 {¶ 71} In his tenth assignment of error, the defendant argues that he was denied due process of law and is thus entitled to a new trial based on the trial court's failure to include in the record for appeal the written jury instructions which were provided to the jury. We disagree with the defendant.
 {¶ 72} R.C. 2945.10 provides that written charges and instructions shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the papers of the case. The purpose of this requirement is to ensure that a reviewing court will be able to determine if error exists in the jury charge. State v. Smith
(1993), 87 Ohio App.3d 480. While written jury instructions should be preserved as a part of the record, a failure to do so is not per se reversible error. State v. Mills (Dec. 9, 1999), Cuyahoga App. No. 74700. In State v. Mills, this court held that where both the state and the defense had an opportunity to review the court's proposed written instructions and neither party identified an error in the written instructions, nor alleged a variation between the court's oral and written instructions previously reviewed, the absence of the court's written jury instructions from the record is not reversible error.
 {¶ 73} Furthermore, the defendant bears the burden of demonstrating that any error in failing to preserve the written instructions resulted in prejudice to the defendant. State v. Warner
(1990), 55 Ohio St.3d 31, fn. 19; State v. Hudson, Cuyahoga App. No. 79010, 2002-Ohio-1408; State v. Cruz (Jan. 27, 2000), Cuyahoga App. No. 75723.
 {¶ 74} In this case, the defendant has failed to demonstrate that the failure to include the written instructions in the record resulted in prejudice to him. As this court stated in State v. Hudson, supra:
 {¶ 75} "Defendant points to no prejudice whatsoever from the court's failure to include the written jury instructions in the record, and the record shows that neither party objected to the court's instructions as read to the jury. Absent a showing of prejudice, we find the court's failure to include the written instructions in the record is harmless error. State v. Nichols (Mar. 2, 2000), Cuyahoga App. Nos. 75605 and 75606."
 {¶ 76} This assignment of error is without merit.
 {¶ 77} "XI. The trial court erred by failing to comprehensively instruct the jury following closing arguments."
 {¶ 78} The defendant contends that the trial court's failure to instruct the jury following closing arguments entitles him to a new trial. We disagree.
 {¶ 79} In this case, the trial court gave comprehensive jury instructions prior to closing arguments. The defendant asserts that this error in the timing of the jury instructions warrants reversal. However, we note that the defendant did not object to the timing of the court's instructions to the jury and therefore has waived all but plain error.State v. Waddell (1996), 75 Ohio St.3d 163.
 {¶ 80} The defendant does not complain of the content or adequacy of the instructions that were given to the jury. In that regard, this court has stated, "absent objection, plain error would not be found where there is no challenge to the content of the instructions per se, but rather the challenge is to the order or format by which the instructions were delivered by the court." State v. Ross (Sept. 20, 2001), Cuyahoga App. No. 78698, appeal disallowed (2002), 94 Ohio St.3d 1488. Here, as inRoss, the defendant does not challenge the content of the instructions and has failed to demonstrate plain error. This assignment of error is overruled.
 {¶ 81} "XIII. The trial court failed to consider whether the total sentence imposed was consistent with sentences received by similarly situated offenders committing similar offenses."
 {¶ 82} The defendant argues that the trial court erred in failing to comply with the proportionality requirements in R.C. 2929.11(B). Specifically, he complains that the trial court failed to consider whether the sentence he received was consistent with sentences imposed by other judges confronted with similar offenders having committed similar offenses. We disagree with the defendant and find no merit to this assignment of error.
 {¶ 83} R.C. 2929.11 sets forth Ohio's purposes and principles of felony sentencing, which are to be implemented by sentencing courts by applying the appropriate sentencing section of the Revised Code, i.e. R.C. 2929.14. R.C. 2929.11(B) does not require the trial court make specific findings; rather it sets forth objectives for sentencing courts to achieve. State v. Bolton, Cuyahoga App. No. 80263, 2002-Ohio-4571.
 {¶ 84} There is nothing in the record which indicates that the trial court failed to consider the purposes and principles of R.C. 2929.11
in sentencing the defendant. We therefore overrule this assignment of error.
 {¶ 85} "XIV. The trial court erred in including mention of a post-release control term in its journal entry memorializing the sentence imposed when no mention was ever made at the time of sentencing regarding a post-release control term."
 {¶ 86} Pursuant to R.C. 2929.19(B)(3), the trial court has a mandatory duty at the sentencing hearing to notify the defendant that he is subject to post-release controls. State v. Bryant, Cuyahoga App. No. 79841, 2002-Ohio-2136; State v. Rashad (Nov. 8, 2001), Cuyahoga App. No. 79051; State v. Wright (Sept. 28, 2000), Cuyahoga App. No. 77748. "At sentencing" means "at the sentencing hearing," rather than "in the sentencing entry." State v. Bryant, supra.
 {¶ 87} A review of the sentencing hearing transcripts reveals that the trial court did in fact fail to satisfy the notification requirements of R.C. 2929.19(B)(3). Thus, we sustain this assignment of error and remand this case in compliance with R.C. 2929.19(B)(3).
 {¶ 88} "XV. R.C. 2950.09(C)(2)(b)(ii) is unconstitutional and void due to vagueness, depriving Mr. [Gooden] of his federal and state constitutional rights to due process."
 {¶ 89} In his fifteenth assignment of error, appellant argues that R.C. 2950.09(C)(2)(b)(ii) is unconstitutionally vague. This argument is without merit since the Ohio Supreme Court has determined that R.C. 2950 is not unconstitutionally vague. State v. Williams, 88 Ohio St.3d 513,2000-Ohio-428, cert denied (2000), 531 U.S. 902; see, also, State v.Sanders (May 15, 2000), Clermont App. No. CA99-07-069 (held that R.C.2950.09 [C][2][b][ii] is not unconstitutionally vague.) This assignment of error is overruled.
 {¶ 90} "XVI. The trial court erred by not making findings in support of its adjudication of Mr. Gooden as an habitual sexual offender with the additional requirement of community notification."
 {¶ 91} A review of the sexual predator hearing transcript and the journal entry relating to appellant's adjudication as a habitual sexual offender reveals that the trial court failed to discuss on the record the evidence and the factors upon which it based its decision. This failure mandates a reversal of that adjudication and a remand for a new sexual predator hearing. State v. Eppinger (2001), 91 Ohio St.3d 158; State v.Thompson (2001), 92 Ohio St.3d 584; State v. McCuller, Cuyahoga App. No. 79870, 2002-Ohio-2254. We sustain this assignment of error and remand for further proceedings consistent with this opinion.
KENNETH A. ROCCO, A.J., concurs.
COLLEEN CONWAY COONEY, J., concurs in part and dissents in part (See attached concurring dissenting opinion).