JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Charles Shepherd ("defendant") appeals from the judgment of the trial court which found the defendant guilty of rape and attempted kidnapping. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} The defendant was indicted on one count of rape in violation of R.C. 2907.02 with a repeat violent offender specification, a notice of prior conviction and a sexually violent predator specification, a felony of the first degree. He was also charged with one count of attempted kidnapping in violation of R.C. 2923.02 and 2925.01 with a repeat violent offender specification and a sexual motivation specification, a felony of the second degree. The defendant, through counsel, filed a motion in limine seeking to exclude the defendant's thirteen-year-old felony conviction, which the trial court denied. A jury trial followed.
 {¶ 3} Ms. Jones ("the victim") is a severely handicapped thirty-three-year-old woman with a mental age of five and an IQ substantially below that which is considered mentally handicapped. On July 3, 2002, as she was returning from the store with her friend, the victim noticed that the defendant, a former "friend," was following her. He had called her earlier that day, but the victim had previously told the defendant that she did not want to see him anymore. She testified that after she told the defendant she did want to see him anymore, he began calling her and harassing her, leaving derogatory comments and messages on her answering machine and threatening her.
 {¶ 4} Upon noticing the defendant that day and believing he was following her, the victim feared that the defendant would try to see her. The victim reported the incident to the security guard at her apartment complex. The security guard immediately notified the Euclid police department.
 {¶ 5} Officer James Mylott of the Euclid police department responded to the call. After further investigation, he found the defendant parked at a nearby gas station, admittedly waiting to pick-up the victim. He testified that he was going to pick her up to take her to his apartment.
 {¶ 6} The ensuing investigation revealed that the victim and the defendant had had sexual relations over a long period of time. The defendant told the police officer that it was a consensual relationship. It was clear to the officer, however, and others who testified at trial, that the victim was incapable of consenting to such a relationship. The victim had child-like interests, such as completing puzzles, coloring, watching television shows such as Clifford the Big Red Dog and Scooby Doo, and playing hide and seek with her best friend who was a child.
 {¶ 7} At trial, the state presented the testimony of the victim's caseworker, Ms. Price, who spent about four days each week helping the victim with daily tasks, such as shopping, decision-making and getting dressed. The state also presented the expert testimony of Dr. Richard Rowlett, who stated that the victim had been receiving services from the Cuyahoga County Board of Mental Retardation for a number of years. He testified that her mental age was that of about a five-year-old. He further stated that she was severely mentally retarded, as evidenced by her IQ of about 33 or 34. He stated that an IQ of 70 or below indicates mental retardation.
 {¶ 8} At the close of the state's evidence, the defendant moved for a Crim.R. 29 motion which was denied. The defendant was found guilty of rape and attempted kidnapping. The court sentenced the defendant to ten years incarceration in addition to ten-years-to-life incarceration on count one. The court sentenced the defendant to the maximum of eight years in addition to ten years on count two, each to run consecutively. It is from this ruling and his attendant sentences that the defendant now appeals, asserting nine assignments of error for our review.
 {¶ 9} "I. The trial court erred in not holding the hearing regarding Appellant's motion in limine in a timely fashion as required by the statute."
 {¶ 10} The defendant filed a motion in limine seeking to exclude evidence of a prior conviction for a sexually oriented offense. The defendant urges that the trial court erred in failing to hold a hearing regarding this motion three days prior to trial, as required by R.C.2907.02(D). He therefore maintains that his conviction should be reversed. We disagree.
 {¶ 11} R.C. 2907.02 states, in relevant part:
 {¶ 12} "(D) Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59
of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
 {¶ 13} "(E) Prior to taking testimony or receiving evidence of any sexual activity of the victim or defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial."
 {¶ 14} We note initially, that the defendant failed to raise the issue of the timeliness of the motion in limine hearing and has therefore waived all but plain error. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Notice of plain error applies only under exceptional circumstances to prevent a manifest miscarriage of justice. Id. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." Statev. Moreland (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899; State v.Phillips (1995), 74 Ohio St.3d 72, 83, 656 N.E.2d 643, 658.
 {¶ 15} In this case, the defendant, through counsel, filed a motion in limine on September 18, 2002, three days prior to trial which began on September 23, 2002. On the morning of the 23rd, prior to the start of trial, the trial judge conducted a hearing on the motion in limine. The record reveals that the hearing was extensive, that each party presented their respective positions to the court, and the trial court made an informed determination that the evidence in question was admissible. We cannot say that the outcome would clearly have been otherwise had the trial court conducted a hearing just a few days prior. We find no merit to this assignment of error.
 {¶ 16} "II. The trial court erred in its ruling denying appellant's motion in limine seeking to prevent the state from using Appellant's prior felony conviction of more than ten (10) years old for impeachment purposes."
 {¶ 17} In his second assignment of error, the defendant challenges the propriety of the trial court's decision to allow impeachment evidence of his thirteen-year-old conviction in contravention of Evid.R. 609(B).
 {¶ 18} It is well-settled that the trial court has broad discretion in determining the admissibility of evidence. State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, we will not disturb the trial court's ruling absent an abuse of discretion. "The term `abuse of discretion' connotes more than error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying this standard of review, an appellate court must not substitute its judgment for that of the trial court. State v. Reiner (2001), 93 Ohio St.3d 601, citing Berk v.Matthews (1990), 53 Ohio St.3d 161. Rather, reversal on appeal is warranted only when the trial court has exercised its discretion unreasonably, arbitrarily or unconscionably. Id. citing State v. Adams
(190), 62 Ohio St.2d 151.
 {¶ 19} Evid.R. 609 provides for impeachment of witness by evidence of conviction of a crime. It states, in relevant part:
 {¶ 20} "(A)(2) * * * evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 21} However, Evid.R. 609(B) places a time limit on the use of such information. It provides:
 {¶ 22} "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of probation, or shock probation * * * unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."
 {¶ 23} Therefore, Evid.R. 609 requires a trial court to find, by specific facts, that the probative value of the prior conviction outweighs its prejudicial effect. Further, stale convictions should be admitted only in rare circumstances, after the trial court has made specific findings on the record which reflect the facts and circumstances which justify the admission of the conviction. State v. Fluellen (1993),88 Ohio App.3d 18.
 {¶ 24} In this case, the defendant maintains that because the trial court denied his motion in limine to exclude evidence of his prior conviction, he was prevented from taking the stand in his defense. We note, however, that "an order granting or denying a motion in limine is a tentative, preliminary, or presumptive ruling about an evidentiary issue that is anticipated. An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial." State v. White
(1982), 6 Ohio App.3d 1. Thus, even when counsel files a motion in limine which is denied by a court, counsel must renew the objection during trial to preserve the issue for appeal. State v. Wilson (1982),8 Ohio App.3d 216; State v. Elliott (Feb. 27, 1995), Highland App. No. 94CA836; State v. Daugherty (Dec. 30, 1993), Lucas App. No. L-92-126;State v. Hall (Sept. 30, 1988), Union App. No. 14-86-29.
 {¶ 25} We reject the notion that the trial court "prevented" the defendant from taking the stand in his defense. In order to properly challenge the court's interlocutory ruling, he was required to do so and object during trial when, and if, the prosecution attempted to introduce evidence of his prior conviction. Accord State v. Elliott, supra. We therefore find that the defendant has waived any potential error by the trial court and overrule this assignment of error.
 {¶ 26} "III. The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence that appellant committed these crimes and erroneously permitted the jury to return a speculative verdict where no specific date was set forth."
 {¶ 27} The defendant maintains that the state failed to prove the essential elements of rape and attempted kidnapping. Specifically, the defendant contends that his relationship with the victim was a consensual "boyfriend-girlfriend" relationship. In support of his argument, the defendant implicitly rejects the notion that the victim was unable to consent due to a mental handicap, and finds support for this notion by stating that the victim was thirty-three years old, lived alone and admitted to having sex with the defendant over a long period of time.
 {¶ 28} Crim.R. 29 provides:
 {¶ 29} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 30} A motion for acquittal pursuant to Crim.R. 29 is, in essence, a claim of insufficient evidence. When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus, citing Jackson v. Virginia (1979),443 U.S. 307. Thus a reviewing court will not overturn a conviction for insufficiency of the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh
(2001), 90 Ohio St.3d 460. Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact, who observed the witness in person. State v. Antill
(1964), 176 Ohio St. 61; State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 31} R.C. 2907.02 provides that:
 {¶ 32} (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when any of the following applies:
 {¶ 33} (c) the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.
 {¶ 34} The offense of kidnapping is governed by R.C. 2905.01
which provides that:
 {¶ 35} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 36} "(4) To engage in sexual activity * * *."
 {¶ 37} Further, the R.C. 2923.02, the attempt statute provides:
 {¶ 38} "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of the offense, shall engage in conduct that, if successful, would constitute or result in the offense. * * *
 {¶ 39} "(E) Whoever violates this section is guilty of an attempt to commit an offense. * * *"
 {¶ 40} In this case, the state presented the testimony of the thirty-three-year-old victim. On direct examination, she stated that she liked school because of the girl scouts and gym class. She testified that her interests include completing puzzles, coloring, playing hide and seek and watching television shows such as Scooby Doo and Clifford the Big Red Dog. She stated that she lived alone, but her caseworkers would come to check on her regularly.
 {¶ 41} The victim referred to the defendant as a "friend" and admitted that she had sex with him in the past. She described her relationship with the defendant by explaining that he would come to her house, take her to his house where he would make her take off all of her clothes, get on top of her, have sex with her and then drive her back to her house. The victim testified that she did not want to have sex with the defendant. She further testified that the defendant bought things for her, such as coloring books, puzzles, pop and candy. The victim also testified that the defendant had threatened to kill her and her mom in the past if she did not have sex with him.
 {¶ 42} The state presented the testimony of Ms. Price, the victim's caregiver through Koinonia Homes, a social service agency. She testified that about four days a week, she visits the victim and helps her with grocery shopping, decision making, personal hygiene issues, matching her clothes and picking out what she is going to wear for the day. Ms. Price stated that the victim has another friend who helps her other days of week. She also testified that the victim's best friend is a child.
 {¶ 43} Officer James Mylott of the Euclid police department testified that he responded to a call on July 3, 2002 that a male parked across the street from an apartment complex was trying to lure a mentally challenged female into his car. He stated that after speaking with the victim, he realized immediately that she was mentally challenged.
 {¶ 44} Testimony at trial revealed that the victim's mental capabilities were immediately apparent to others. The defendant, however, described his relationship with the defendant as a "boyfriend-girlfriend" relationship. We note that this testimony simply lends credence to the fact he would have been very familiar with her child-like interests and mental capacity. He was a sixty-four-year-old male who bought pop, candy, coloring books and puzzles for the victim. We find that the defendant had reasonable cause to know of her mental deficiencies.
 {¶ 45} In viewing the aforementioned evidence in a light most favorable to the prosecution, sufficient evidence existed to establish that the defendant engaged in sexual conduct with the victim and that he had reasonable cause to know that the victim's ability to resist or consent was substantially impaired because of a mental condition. Moreover, testimony was adduced at trial which indicated that the victim did not consent to the sexual conduct, nor did she have the capacity to do so.
 {¶ 46} With regard to the defendant's conviction for attempted kidnapping, we find that sufficient evidence existed to establish that the defendant attempted to kidnap the mentally incompetent victim from her home on July 3, 2002. Specifically, the victim testified that the defendant had called her earlier and told her that he was coming over because he wanted her to go to his house. The victim went to the store with her friend, at which point she noticed the defendant following her. She stated that she told the security guard that the defendant was outside and the security guard called the Euclid police. Officer Mylott testified that when he responded to the call that a male was attempting to lure a mentally challenged woman away from her apartment, he questioned the defendant as to why he was waiting in his car at the gas station. The defendant admitted that he was waiting to pick the victim up from her apartment to take her to his apartment. The officer further testified that the victim, who was visibly frightened, had stated that she had told the defendant not to call her and he had become angry. The security guard testified that the defendant was no longer permitted on the property because he had been bothering the victim for some time.
 {¶ 47} Viewing these facts in a light most favorable to the prosecution, we find that sufficient evidence existed to demonstrate that the defendant attempted to lure the victim away from her home for the purpose of engaging in sexual activity. We therefore find that the defendant's conviction for attempted kidnapping was supported by sufficient evidence.
 {¶ 48} Lastly, within this assignment of error, the defendant further alleges that because there was a defect in the indictment, the jury should not have been permitted to return a "speculative verdict."
 {¶ 49} As this court aptly noted in State v. Johnson, Cuyahoga App. No. 80436, 2002-Ohio-7057:
 {¶ 50} "Young victims of sexual abuse invariably do not have the temporal memory of an adult and, therefore, often are unable to remember exact times and dates. This is particularly true when the offenses involve a repeated course of conduct over a lengthy period of time." State v. Barnecut (1988), 44 Ohio App.3d 149.
 {¶ 51} Further, "Because the precise date and time of the offense of rape are not essential elements of that crime, a certain degree of inexactitude in averring the date of the offense is not necessarily fatal to its prosecution." State v. Krzywkowski, Cuyahoga App. No. 80392, 2002-Ohio-4438, quoting State v. Marrs, 2nd Dist. App. No. 18903, 2002-Ohio-3300; see also, State v. Sellards (1987), 17 Ohio St.3d 169. However, if the inexactitude prejudices the defendant, for instance, by limiting the defendant's ability to fairly defend himself, the lack of specificity may be impermissible. State v. Barnecut, supra.
 {¶ 52} In this case, while the victim was thirty-three, an expert witness testified that her IQ reflected that she was severely retarded and had a mental age of five years old. Further, the defendant has not demonstrated any resulting prejudice. He does not allege that the failure to produce a specific date in the indictment prevented him from preparing his defense. We therefore reject the defendant's contention and overrule this assignment of error.
 {¶ 53} "IV. Appellant's conviction is against the manifest weight of the evidence."
 {¶ 54} In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, citingTibbs v. Florida (1982), 457 U.S. 31. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison
(1985), 23 Ohio App.3d 10. The credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. Statev. Antill (1964), 176 Ohio St. 61; State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 55} In light of the facts delineated in the above assignment of error, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the defendant's conviction must be reversed. We therefore overrule this assignment of error.
 {¶ 56} "V. Appellant was denied effective assistance of counsel as guaranteed by Section 1, Article I, of the Ohio Constitution and theSixth and Fourteenth amendments to the United States Constitution when counsel failed to request to have the alleged victim evaluated by a psychological expert for the defense, or by an independent psychological expert."
 {¶ 57} "VI. Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and theSixth and Fourteenth amendments to the United States Constitution when counsel failed to request the lesser included offense of sexual battery which would have permitted testimony about the alleged victim's specific instances of sexual activity."
 {¶ 58} Having a common basis in law, we address together defendant's fifth and sixth assignments of error.
 {¶ 59} In establishing a claim of ineffective assistance of trial counsel, it is clear that a defendant must make a two-part showing:
 {¶ 60} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless the defendant makes both showings, it cannot be said that the conviction *** resulted from a breakdown in the adversary process that renders the result unreliable."Strickland v. Washington (1986), 466 U.S. 668, 687, 80 L.Ed.2d 674,104 S.Ct. 2052. Accord State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph two of the syllabus. The Strickland Court also cautioned courts examining the issue that:
 {¶ 61} "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac (1982), 456 U.S. 107, 133, 134,71 L.Ed.2d 783, 102 S.Ct. 1558. * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 689. See, also, State v. Frazier (1991),61 Ohio St.3d 247, 253, 574 N.E.2d 483. In addition, absent demonstration of prejudice, this court must indulge in a strong presumption that the failure to object at trial constitutes sound strategy. Strickland,
supra; State v. Moore (1994), 97 Ohio App.3d 137, 646 N.E.2d 470. See, also, State v. Catlin (1990), 56 Ohio App.3d 75, 564 N.E.2d 750.
 {¶ 62} The defendant first argues that his trial counsel was ineffective due to his failure to move the court to bar the state from using evidence of the victim's mental condition obtained by Dr. Rowlett prior to trial. In support of his argument the defendant cites State v.Zeh (1987), 31 Ohio St.3d 99, in which the Supreme Court of Ohio held:
 {¶ 63} "When the mental condition of the victim-potential witness is a contested, essential element of the crime charged, the defense may
move the court that the state be barred from utilizing evidence of such mental condition obtained in a clinical interview of the witness prior to trial, unless such witness voluntarily agrees to a court-appointed, independent examination with the results being made available to both sides." [Emphasis added.] Id. at paragraph two of the syllabus.
 {¶ 64} We begin our analysis with examining whether the defendant suffered prejudice as a result of the alleged errors of trial counsel. We find that the defendant has failed to demonstrate sufficient prejudice by his trial counsel's failure to move the court to bar the state's expert witness who stated that the victim had an IQ of about 33 or 34 and a mental age of five. There was sufficient other testimony which supported the state's assertion that the defendant had reasonable cause to know that the victim was mentally impaired. Specifically, Officer Mylott testified that upon meeting the victim, it was clear to him that she was mentally handicapped. Also, Ms. Price, the victim's caseworker, and her supervisor, Mr. Lynch, testified regarding the victim's mental capacity. Further, the victim herself testified, which allowed the jury to determine whether her mental incapacity was immediately noticeable. We therefore find that, even if the expert witness testimony had been barred altogether, evidence supporting the victim's mental incapacity was properly before the jury. We cannot say that but for trial counsel's errors, a reasonable probability exists that the result would have been otherwise.
 {¶ 65} The defendant also claims that his trial counsel was ineffective for failing to request an instruction on the lesser-included offense of sexual battery. We disagree. Failure to request lesser included offense instructions is a matter of trial strategy and does not establish ineffective assistance of counsel. State v. Boone, Stark App. No. 2001CA00167, 2001-Ohio-7044; State v. Combs, Stark. App. No. 2001CA00222, 2002-Ohio-1136.
 {¶ 66} Because we can dispose of the defendant's claims of ineffective assistance of counsel on the basis that he failed to establish prejudice, we need not determine whether trial counsel's performance fell below an objective standard of reasonable representation.
 {¶ 67} "VII. Appellant was denied a fair trial due to prosecutorial misconduct."
 {¶ 68} The defendant avers that the prosecutor purposely and improperly attempted to influence the jury by giving the victim a candy bar at the end of her testimony. The defendant further avers the prosecutor repeatedly and improperly referred to the defendant as a "wolf."
 {¶ 69} The conduct of a prosecuting attorney during the course of trial cannot be made a ground for error unless that conduct deprived the defendant of a fair trial. State v. Papp (1978), 64 Ohio App.2d 203. In addition, another factor to be considered in determining whether the prosecutor's actions constituted misconduct is whether the remarks prejudicially affected substantial rights of the defendant. State v.Smith (1984), 14 Ohio St.3d 13; State v. Brooks (Aug. 15, 1985), Cuyahoga App. No. 48914, reopening disallowed, (Nov. 9, 2000), Motion No. 19635 at 4.
 {¶ 70} We note that the defendant failed to object to any instance of alleged prosecutorial misconduct and therefore has waived all but plain error. Notice of plain error applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v.Moreland (1990), 50 Ohio St.3d 58, 62; State v. Phillips (1995),74 Ohio St.3d 72, 83.
 {¶ 71} In this case, the prosecutor handed the victim a dollar bill and asked her to pretend she was going to the store to buy a candy bar. The prosecutor told her that the candy bar cost forty cents. When she was asked how much change she should receive in return, the victim responded forty cents. At the end of this exercise, the prosecutor told her she could keep the candy bar. This exercise was intended to show the jury the victim's mental capabilities and her child-like qualities.
 {¶ 72} The defendant also complains that the prosecutor referred to him as a "wolf" during closing arguments and this deprived him of a fair trial. We note, however, wide latitude is to be granted to both sides during closing argument. State v. Landrum (1990), 53 Ohio St.3d 107,111.
 {¶ 73} The defendant cites to State v. Keenan (1993),66 Ohio St.3d 402 in support of his proposition. He alleges that inKeenan, the Ohio Supreme Court reversed the defendant's conviction because the prosecutor improperly referred to the defendant as an "animal." A thorough reading of Keenan, however, reveals that the Ohio Supreme Court found that the defendant was denied a fair trial as a result of several egregious instances of prosecutorial misconduct, including: the prosecutor stating his opinion that defense counsel was not looking at the case objectively because they are paid to get the defendant off the hook; denigrating defense counsel for objecting during testimony; improperly presenting the bad character of the defendant's friend to attack the defendant's character; expressing his personal opinion about the guilt of the accused; and lastly, saturating the defendant's trial with appeals to the emotion of jurors.
 {¶ 74} With regard to the Keenan court's treatment of the prosecutor's reference to the defendant as an "animal," the court stated:
 {¶ 75} "After describing Keenan's alleged acts, the prosecutor asked: `That's a human being?' Answering his own question, he called Keenan an `animal.' Such invective is not unfair per se." See Darden v.Wainwright (1986), 477 U.S. 168; State v. Wiles (1991), 59 Ohio St.3d 71. The court went on to state, "but here the epithet added to the emotional smoke screen surrounding the prosecutor's entire argument." Keenan, supra.
 {¶ 76} In this case, the prosecutor made an analogy to the victim as a "lamb," the defendant as a "wolf" and the detective as the "shepherd" who discovered the wolf in sheep's clothing. We cannot say that, in the context of the entire trial, this isolated characterization is comparable to the egregious instances of prosecutorial misconduct found in Keenan, nor that it rises to the level of plain error.
 {¶ 77} We cannot say that but for the alleged instances of prosecutorial misconduct, the outcome of the trial would clearly have been otherwise. We find no merit to this assignment of error.
 {¶ 78} "VIII. The trial court erred by ordering consecutive sentences without making the appropriate findings required by R.C.2929.14(e)(4)."
 {¶ 79} The defendant maintains that the trial court failed to make the appropriate findings to impose consecutive sentences. In support of this contention, he avers that there is no evidence that the victim is suffering or suffered any harm as a result of her relationship with the defendant. Accordingly, he argues, this court should impose concurrent sentences. We find no merit to this assignment of error.
 {¶ 80} R.C. 2929.14(E)(4) provides:
 {¶ 81} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 82} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.19 of the Revised Code, or was under post-release control for the prior offense.
 {¶ 83} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as a part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 84} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 85} R.C. 2929.19(B)(2)(c) requires that a trial court must give its reasons for imposing consecutive sentences under 2929.14.
 {¶ 86} In this case, the trial court found that "consecutive terms are necessary to protect the public; consecutive terms are necessary to punish the offender." (T. 506). The trial judge further found that "the terms of imprisonment are not disproportionate to the seriousness of the offender's conduct and also that the terms of imprisonment are not disproportionate to the danger the offender poses to the public." (T. 506). Lastly, the trial court made the required finding that "the harm caused was so great that no single prison term adequately reflects the seriousness of the conduct." (T. 507).
 {¶ 87} The transcript demonstrates that the trial court did in fact comply with R.C. 2929.19(B)(2)(c) by stating on the record its reasons for imposing consecutive sentences. The trial court's reasons, beyond conclusory statements, for imposing consecutive sentences included: that the defendant preyed upon a young woman who had a mental capacity of that of a five-year-old; that after the victim tried to cease any contact with the defendant, he made harassing phone calls using vulgarities to describe the victim, that the defendant repeatedly attempted to lure her away from her home to have sex with him; that the defendant gained the trust of the victim and then violated it; that the defendant lacked any remorse; that the defendant did not understand how his actions toward the victim were inappropriate; and that the defendant's criminal history indicated his likelihood of recidivism, since he had previously served time for sexual battery and attempted rape of a child.
 {¶ 88} We reject the defendant's assertions that the trial court failed "to make the appropriate findings and those findings were conclusory and speculative." We find that the trial court made all of the appropriate findings and set forth its reasons in support thereof. We therefore overrule this assignment of error.
 {¶ 89} "IX. The trial court erred when it sentenced appellant to maximum sentences without making the appropriate findings."
 {¶ 90} In his final assignment of error, the defendant challenges the trial court's imposition of maximum sentences. The defendant first asserts that the trial court did not make the appropriate findings pursuant to R.C. 2929.14(C) and 2929.19 (B)(2)(d). The defendant further maintains that the relationship between the defendant and the victim was "boyfriend-girlfriend," that the victim suffered no harm or injuries from the relationship and as a result, the defendant could not have committed the worst form of the offense. We reject the defendant's contentions.
 {¶ 91} The defendant had previously been incarcerated. Thus, in order for the trial court to impose the maximum sentence, it must comply with R.C. 2929.14(C).
 {¶ 92} R.C. 2929.14(C) provides that:
 {¶ 93} "Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under Division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 94} At the sentencing hearing, the trial court stated:
 {¶ 95} "In looking at facts and circumstances in this case, I could not think of a circumstance of rape that is any more egregious than to take advantage of somebody who has the mental capacity of a five year old child. This is just sickening and disgusting and anyone with two eyes and a brain in their head can see that this young lady had the mental capacity of a five year old.
 {¶ 96} "She presented as a child, she acted as a child, she sought love and attention as a child. And what you did is you warped her sense of need and affection by preying upon her and by taking advantage of her inability to resist * * *" (T. 487-488).
 {¶ 97} "Also you befriended her and bribed her with pop, with candy with puzzles * * *" (T. 488).
 {¶ 98} "She was so afraid * * * that she needed to approach a security guard. In no way, shape or form were you in any kind of consensual or adult relationship with this person. This was about you exhibiting power over her, somebody who had an utter and complete lack of control and lack of ability to defend herself. And I think, frankly, sir, it's utterly disgusting * * *." (T. 489).
 {¶ 99} "In making the determination that you committed the worst form of the offense, again the Court cites this woman's chronological age; it cites the very obvious fact that she was a child, she was a child mentally and she was very small in stature as well.
 {¶ 100} "It wasn't as if this was a large woman who could have fought back and really she didn't have the mental capacity to talk and you again engaged in repeated sexual activity with this woman both in her own apartment * * *. And it is this Court's finding that the offender committed the worst form of the offense." (T. 490).
 {¶ 101} Further, with regard to whether the defendant posed the greatest likelihood of committing future crime, the court considered the defendant's criminal history, which included sexual battery and attempted rape of a minor child. The court found that this indicated that he had a "predilection toward children and perhaps a need to control the people with whom [he is] engaging in sexual activity." (T. 491). The court further announced that the defendant's failure to understand the impropriety of his relationship with the victim was a reason that he posed the greatest likelihood to re-offend.
 {¶ 102} We find that the trial court complied with the statute and overrule this assignment of error.
Judgment affirmed.
DIANE KARPINSKI, J., CONCURS.
COLLEEN CONWAY COONEY, J., CONCURS IN JUDGMENT ONLY