THE STATE OF OHIO, APPELLEE, *v.* CATLIN, APPELLANT.

(No. 11885—Decided July 10, 1990.)

*Ted E. Millspaugh,* assistant prosecuting attorney, for appellee.

*Dennis L. Bailey,* for appellant.

FAIN, J. Defendant-appellant Oscar Catlin appeals from his conviction and sentence for felonious assault, with a firearm specification. Catlin contends that the trial court erred by refusing to give an instruction that Catlin had the right to use such force as was reasonably necessary to eject the victim, whom he considered to be a trespasser, from his home, and that this force might include deadly force, regardless of whether Catlin was in reasonable fear of death or great bodily harm; that the trial court abused its discretion under Evid. R. 403 by excluding certain testimony concerning the victim's propensity to beat his wife when drunk; and that Catlin was denied the effective assistance of counsel when his trial counsel failed to request that the jury be instructed concerning the elements of aggravated assault, as a lesser included offense.

We conclude that the decision not to seek any instruction concerning aggravated assault was a calculated and reasonable trial strategy aimed at obtaining a complete acquittal; that the trial court was within its discretion in excluding testimony concerning the victim's wife-beating propensities; and that Catlin had no right to an instruction that he was privileged to use deadly force, even to eject a trespasser in his home, in the absence of a reasonable belief that he was in danger of death or great bodily harm. Accordingly, the judgment of the trial court will be affirmed.

I

Defendant-appellant Oscar Catlin and the victim, Billy Catlin, are brothers. There was evidence of at least one previous violent encounter between the Catlin brothers. Catlin presented evidence that his brother had a tendency to become violent when under the influence of alcohol. It was stipulated that Catlin's brother had a blood-alcohol level of 0.17 percent when he was admitted to the hospital following the shooting.

There was general agreement in the testimony that on the night of the

shooting, Catlin's brother, accompanied by two other men, called upon Catlin at his home. Catlin's brother wished to discuss some money that Catlin owed, his failure to support his daughter, and his plans to marry. An argument ensued.

According to the state's witnesses, no force was used by the victim or the men accompanying him, nor was Catlin threatened with physical harm. The testimony of one of the state's witnesses was as follows:

"At the time I was talking to Sharon Tann. When I turned around, that's what I heard and he said—he [Catlin's brother Billy] said, why are you marrying this bitch and you can't take care of your own daughter.

"At that point in time, Oscar was rubbing his head. He walked in the back of his room and I heard drawers shuffling and I told H. C., I mean Hulon Catlin, Jr., and I said Billy Catlin, I said, he's getting a gun, so I went to the door and I had my hand on the door and I had my head sticking through the living room because I wanted to see what was going on but I was so scared that somebody was going to get hurt. Oscar came back out, took three steps, shot Billy, and said do we have a problem. At that time I ran. I ran."

Catlin's testimony concerning the shooting was as follows:

"A. Yeah, he started talking to my wife and so we was all standing in the front room there and that's when he started cussing at me, telling me—

"Q. Who did?

"A. Billy, He said he was going to jump on me and kick my ass and all this other nasty stuff he was saying.

"* * *

"Q. Okay. What happened next?

"A. Okay. Then we got into the shoving match, you know, where he got to pushing me around and stuff and I rolled off the couch and I stepped back in the bedroom and pulled my pistol out and shot him.

"Q. Okay. Now, you said you got into a shoving match?

"A. Right.

"Q. Who shoved who first?

"A. Well, he shoved me first.

"Q. Okay. did you say anything?

"A. I told him to leave me alone, get out of my house; but he kept on shoving back.

"Q. Was he yelling at you?

"A. Uh-huh. He was yelling and cussing at me at the same time.

"Q. What was he saying at this point?

"A. He was saying mother fucker you this and mother fucker you that.

"Q. Now, you said that at one point you were on the sofa?

"A. Right.

"Q. Why were you on the sofa?

"A. Because he had pushed me up against the sofa and I rolled off the sofa.

"Q. So you were on the sofa and you rolled off the sofa?

"A. Right.

"Q. Okay. Where is the sofa located in your apartment?

"A. It's against the wall, right there by the door to the bedroom?

"Q. So you rolled off the sofa, what happened next?

"A. I stepped back in the bedroom and reached for my pistol and pulled it and shot him.

"Q. Okay. Where was the pistol?

"A. It was on my dresser.

"Q. Where's the dresser?

"A. It's just right around the doorway in the bedroom.

"Q. Did you say anything when you pulled the pistol out?

"A. I just said leave me alone.

"Q. Okay. Where did you shoot him?

"A. I shot him right here on the—this area (indicating).

"Q. Is that where you meant to shoot him?

"A. No, I wasn't planning on shooting him period.

"Q. You weren't?

"A. I was shooting to the side of him but he jumped and the bullet hit him right here on the side (indicating).

"Q. About how far away was he?

"A. Not that far. About four or five feet I guess."

Catlin was charged with felonious assault with a firearm specification, and tried by a jury. During the trial, Catlin called Anna Catlin, his brother's former wife. Catlin sought to establish through her testimony that his brother became violent when intoxicated and that his brother had a history, when they were married, of beating her when he was drunk. The trial court excluded this testimony upon the ground that its probative value was outweighed by its prejudicial effect, and by its tendency to confuse or mislead the jury.

At the conclusion of the trial, Catlin requested that the jury be instructed concerning the defendant's right to use reasonable force to eject a trespasser. The trial court declined to give this instruction, but did instruct the jury concerning self-defense and included within its instruction an instruction that "one has no duty to retreat when in his own home."

There was no request that the jury be instructed concerning the elements of aggravated assault, and no such instructions were given.

The jury found Catlin guilty as charged, a judgment of conviction was entered, and Catlin was sentenced accordingly. From his conviction and sentence, Catlin appeals.

## II

Catlin's First and Second Assignments of Error are as follows:

"The trial court erred in overruling defendant's motion for a new trial.

"The trial court erred in not instructing the jury that defendant had the right to use reasonable force to eject a trespasser from his residence."

Because Catlin's sole argument in support of his First Assignment of Error is that the trial court should have given the requested instruction, we will consider these assignments of error together.

Catlin relies upon *State* v. *Peacock* (1883), 40 Ohio St. 333, in support of his proposition that a person has the right to use reasonable force to eject a trespasser in his own home. The state contends that the principle established in *Peacock* has been superseded in modern practice by the self-defense instruction actually given in this case, which contains an instruction that one has no duty to retreat in his own home.

*Peacock* was an 1883 case decided by the Ohio Supreme Court Commission. Perhaps because it is a commission case, it seems to consist of a syllabus, merely. No facts are mentioned, and it is impossible to determine with any precision the issue presented in that case. Catlin has cited no modern authority for the proposition that a person is entitled to use deadly force to eject a trespasser from his home in the absence of a reasonable belief that he is in danger of death or great bodily harm — the defense of self-defense. In the cases cited by the state — *State* v. *Williford* (1990), 49 Ohio St. 3d 247, 551 N.E. 2d 1279; *State* v. *Jackson* (1986), 22 Ohio St. 3d 281, 22 OBR 452, 490 N.E. 2d 893; and *State* v. *Robbins* (1979), 58 Ohio St. 2d 74, 12 O.O. 3d 84, 388 N.E. 2d 755 — the defendants did not even argue that they were entitled to an instruction that a person is entitled to use deadly force as necessary to eject a trespasser from the home in the absence of reasonable fear of death or great bodily harm.

Because of the relative ease and rapidity with which police may be summoned in the modern world to assist in

the forcible ejection of a trespasser, we conclude that *State* v. *Peacock, supra,* is no longer applicable, but has been superseded by the self-defense instruction, including an instruction that there is no duty to retreat from one's own home, that is supported by modern authority. Perhaps the result might be different if non-deadly force were used to eject a trespasser, but the use of deadly force is not appropriate in the absence of a reasonable fear for the actor's safety.

Catlin's First and Second Assignments of Error are overruled.

### III

Catlin's Third Assignment of Error is as follows:

"The trial court erred in not permitting the testimony of Anna Catlin, former wife of Bill Catlin, on behalf of defendant, Oscar Catlin."

Catlin proffered that the testimony of Anna Catlin, had she been permitted to testify, would have been that she was formerly married to Catlin's brother for a period of about ten years; that Catlin's brother had a propensity for violence when intoxicated; and that, as a result, he had beaten her severely a number of times. She would also have testified that Catlin was aware of his brother's violent propensities.

The trial court excluded this testimony. Although conceding its relevance, the trial court concluded that its prejudicial effect and its tendency to confuse the jury outweighed its probative value, and excluded it pursuant to Evid. R. 403.

We conclude that the trial court did not abuse its discretion in this respect. The proffered testimony would have interjected into this trial the marital dispute between Billy Catlin and Anna Catlin; more importantly, it would have portrayed the alleged victim of the offense for which Oscar Catlin was on trial as a wife-beater and, consequently, a figure to be despised by the jury. The evidence would have had a tendency to inflame the passion and prejudice of the jury against the victim of the alleged offense.

Furthermore, Catlin did testify concerning his brother's propensity for violence, and his testimony was corroborated, at least to some extent, by the testimony of Robert S. Derrick. Thus, the proffered testimony of Anna Catlin was somewhat cumulative of other testimony. Under all of the circumstances, we conclude that the trial court was within its discretion in excluding Anna Catlin's testimony.

Catlin's Third Assignment of Error is overruled.

### IV

Catlin's Fourth Assignment of Error is as follows:

"Defendant was denied his constitutional right to effective assistance of counsel."

In connection with his Fourth Assignment of Error, Catlin argues that his trial counsel erred by failing to renew his request for a jury instruction concerning his right to have used force reasonably necessary to expel his brother from his home, just before the jury retired to deliberate. The state has conceded that the failure to renew this request did not constitute a waiver, and we have accepted the state's concession, and have considered Catlin's contention that he was entitled to the instruction in Part II of this opinion. Accordingly, his trial counsel was not ineffective in failing to renew the request for the instruction just before the jury retired to deliberate.

Catlin also argued that his trial counsel should have sought to have the jury instructed concerning aggravated assault as a lesser included offense of felonious assault.

In a case in which there is a conflict

in the testimony and the defendant has a reasonable hope that the jury will believe his evidence and return a verdict of not guilty, it is a matter of trial strategy whether to seek to have the jury instructed concerning a lesser offense, or not to seek such an instruction and to hope for an acquittal. *State v. Clayton* (1980), 62 Ohio St. 2d 45, 16 O.O. 3d 35, 402 N.E. 2d 1189. In the case before us, Catlin testified that he did not intend to shoot his brother, but instead intended to shoot to one side of his brother, missing him. Catlin testified that at the last instant his brother jumped to that side, placing himself in the line of fire. This testimony was contradicted by the state's witnesses.

Had the jury believed Catlin, he would have been acquitted, since the requisite intent to cause physical harm would have been lacking.

A defense that Catlin was guilty, at most, of aggravated assault, would have been somewhat inconsistent with his testimony and theory of defense. "Aggravated assault" is defined in R.C. 2903.12(A) as being an assault that would constitute a felonious assault but for the fact that it is committed "under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." Thus, in order to have persuaded the jury that he was, at most, guilty of aggravated assault, Catlin would have had to have argued that the shooting was under the influence of sudden passion or in a sudden fit of rage, which was inconsistent with his testimony that he fired to one side, intending to miss his brother. It is difficult to persuade a jury with inconsistent theories of defense. Accordingly, we cannot say that Catlin's trial attorney was ineffective when he eschewed a theory of

defense that would have sought to persuade the jury that Catlin was, at most, guilty of aggravated assault.

Catlin's Fourth Assignment of Error is overruled.

V

Catlin's Fifth Assignment of Error is as follows:

"The cumulative effect of the various errors, even if any [one] of those errors in itself is not reversible, denied appellant a fair trial."

We recognize that cumulative errors may merit a reversal even if no single error, standing by itself, would merit reversal. *State v. DeMarco* (1987), 31 Ohio St. 3d 191, 31 OBR 390, 509 N.E. 2d 1256. This principle has no application in the case before us, however. The essential predicate for the application of this principle is that there must be errors. We have found no error in the proceedings, harmless or otherwise.

Catlin's Fifth Assignment of Error is overruled.

All of Catlin's assignments of error having been overruled, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., and BROGAN, J., concur.