JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Roxanne Smith, appeals her murder and felonious assault convictions. We affirm.
 {¶ 2} Roxanne was charged with murder under R.C. 2903.02(A) (count one) and R.C. 2903.02(B) (count two), and felonious assault under R.C. 2903.11(A)(1) (count three) and R.C. 2903.11(A)(2) (count four). All four counts contained three-year firearm specifications. The case proceeded to a jury trial, and Roxanne was found guilty of murder under R.C. 2903.02(B) with the firearm specification (count two), and both counts of felonious assault with the firearm specifications. She was sentenced to 18 years to life.
 {¶ 3} The trial testimony revealed the following facts. The victim, Johnnie Smith, was Roxanne's uncle. By all accounts, Johnnie had a substance abuse problem and a history of violence, particularly when he was under the influence of alcohol and/or drugs.
 {¶ 4} At the time of the murder, Johnnie and Roxanne were not on good terms, because on a prior occasion Johnnie had been at Roxanne's house, got sick from drinking too much, and vomited on her couch and carpet. Roxanne became upset, ordered Johnnie out of her house, and told him that he was not welcome there again. Johnnie's wife testified that prior to the murder, Roxanne showed *Page 4 
her a gun that Roxanne kept in her home and specifically stated that she "had it because of Johnnie."
 {¶ 5} Nonetheless, Johnnie attended a cookout at Roxanne's house on the day of the murder. He drank alcoholic beverages, eventually got sick, and vomited in the living room. Roxanne put a bucket in front of Johnnie and pushed his head down into it. Johnnie became angry at Roxanne, and the two engaged in a verbal altercation.
 {¶ 6} At some point during the altercation, Roxanne left the living room and returned with a gun. One witness, who unsuccessfully attempted to take the gun away from Roxanne, described her as being "just like in a rage, a high rage." The witness also described that when Johnnie saw Roxanne with the gun, Johnnie had a "fighting" and "aggressive" look.
 {¶ 7} Another witness testified that Roxanne pointed the gun at Johnnie and backed away from him. According to the witness, Johnnie eventually stood up, and walked toward Roxanne as he apologized to her. Roxanne continued to point the gun at him, and Johnnie said something to the effect of "well then, just shoot me." Roxanne did. Johnnie died from two gunshot wounds, one to the chest and the other to the abdomen.
 {¶ 8} Roxanne testified. She described that when Johnnie was finished vomiting, he "jumped up" and she then backed away from him because he had "a crazy look on his face." According to Roxanne, it was at that point that she got *Page 5 
her gun and returned to the living room. She continuously asked him to leave, but he came toward her, so she tried to shoot him in the leg to "stop him," and scare him into leaving, but missed. When he continued to come toward her, she shot him twice. Roxanne testified that she believed Johnnie was going to "sucker punch" her and use the gun against her and, therefore, she feared for her life.
 {¶ 9} Defense counsel argued to the jury that Roxanne acted in self-defense, and the jury was instructed on same. Roxanne now contends that counsel was ineffective because she did not seek jury instructions on the lesser-included offenses of voluntary manslaughter and aggravated assault. We disagree.
 {¶ 10} The claim of ineffective assistance of counsel requires proof that "counsel's performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph two of the syllabus; see, also, State v.Lytle (1976), 48 Ohio St.2d 391, 358 N.E.2d 623. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." Bradley at paragraph three of the syllabus.
 {¶ 11} The burden is on the appellant to prove ineffectiveness of counsel. State v. Smith (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128. Trial counsel is *Page 6 
strongly presumed to have rendered adequate assistance. Id. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id.
 {¶ 12} A trial court must instruct a jury on a lesser included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988), 40 Ohio St.3d 213, 216,533 N.E.2d 286. An instruction is not warranted, however, every time "some evidence" is presented on a lesser included offense. State v. Shane
(1992), 63 Ohio St.3d 630, 633, 590 N.E.2d 272. "To require an instruction *** every time some evidence, however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." Id. at 633.
 {¶ 13} Both voluntary manslaughter and aggravated assault require "sudden passion" or "a sudden fit of rage" brought on by "serious provocation."[1] *Page 7 
Although arguably some evidence of voluntary manslaughter had been presented (not by Roxanne, but by the State's witness who described Roxanne as being in a rage), counsel chose to pursue the theory of self-defense. That decision was a reasonable trial strategy calculated to obtain a complete acquittal. We find the Second Appellate District's reasoning on what constitutes a reasonable trial strategy apropos to this case:
 {¶ 14} "In a case in which there is a conflict in the testimony and the defendant has a reasonable hope that the jury will believe his evidence and return a verdict of not guilty, it is a matter of trial strategy whether to seek to have the jury instructed concerning a lesser offense, or not to seek such an instruction and to hope for an acquittal. State v. Clayton (1980), 62 Ohio St.2d 45, 16 O.O. 3d 35,402 N.E. 2d 1189." State v. Catlin (1990), 56 Ohio App.3d 75, 78-79,564 N.E.2d 750.
 {¶ 15} The Catlin court further reasoned:
 {¶ 16} "A defense that [the defendant] was guilty, at most, of aggravated assault, would have been somewhat inconsistent with his testimony and theory of defense. *** [I]n order to have persuaded the jury that he was, at most, guilty of aggravated assault, [the defendant] would have had to have argued that the *Page 8 
shooting was under the influence of sudden passion or in a sudden fit of rage, which was inconsistent with his testimony that he fired to one side, intending to miss his brother. It is difficult to persuade a jury with inconsistent theories of defense. Accordingly, we cannot say that [the defendant's] trial attorney was ineffective when he eschewed a theory of defense that would have sought to persuade the jury that [the defendant] was, at most, guilty of aggravated assault." Id. at 79.
 {¶ 17} Similarly, in this case, Roxanne's trial testimony did not support a request for voluntary manslaughter and aggravated assault instructions. Specifically, Roxanne testified that she shot Johnnie because she believed he was going to "sucker punch" her and use the gun against her and, therefore, she feared for her life-classic self-defense testimony.
 {¶ 18} In light of the above, defense counsel was not ineffective by not requesting jury instructions on voluntary manslaughter and aggravated assault, and the sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's *Page 9 
conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and JAMES J. SWEENEY, J., CONCUR.
[1] R.C. 2903.03, governing voluntary manslaughter, provides that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy."
R.C. 2903.12, governing aggravated assault, provides that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
"* * *
"(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code." *Page 1