[Cite as *State v. Daniel*, 2016-Ohio-5231.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103258**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES W. DANIEL

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-589487-A

**BEFORE:**    Celebrezze, J., Jones, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:**    August 4, 2016

**ATTORNEY FOR APPELLANT**

Steve W. Canfil
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Brett Hammond
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Defendant-appellant, James Daniel ("appellant"), brings this appeal challenging his convictions for rape, aggravated robbery, and kidnapping. Specifically, appellant argues that (1) the trial court erred by determining that he was competent to stand trial, (2) the trial court erred by failing to provide the jury with an attempted rape instruction, (3) the trial court erred by permitting Officer John Kazimer to testify about the credibility of one of the victims, and (4) the trial court erred by failing to hold a *Daubert* hearing on the issue of historical cell phone records. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

**{¶2}** The instant criminal proceedings arose from three separate rape and kidnapping incidents. The incidents occurred in Lakewood, Ohio and Cleveland, Ohio in August and September 2014. S.N. was the victim of the first incident. J.S. was the victim of the second incident. K.K. and J.B. were the victims of the third incident.

**{¶3}** The Cuyahoga County Grand Jury returned a 23-count indictment charging appellant with: (1) aggravated burglary, in violation of R.C. 2911.11(A)(1); (2) aggravated burglary, in violation of R.C. 2911.11(A)(2); (3) rape, in violation of R.C. 2907.02(A)(2); (4) kidnapping, in violation of R.C. 2905.01(A)(4); (5)-(7) rape, in violation of R.C. 2907.02(A)(2); (8) kidnapping, in violation of R.C. 2905.01(A)(4); (9) aggravated robbery, in violation of R.C. 2911.01(A)(1); (10) kidnapping, in violation of

R.C. 2905.01(A)(2); (11) having weapons while under disability, in violation of R.C. 2923.13(A)(2); (12) aggravated robbery, in violation of R.C. 2911.01(A)(1); (13) kidnapping, in violation of R.C. 2905.01(A)(2); (14) aggravated robbery, in violation of R.C. 2911.01(A)(1); (15) kidnapping, in violation of R.C. 2905.01(A)(2); (16) having weapons while under disability, in violation of R.C. 2923.13(A)(2); (17)-(18) rape, in violation of R.C. 2907.02(A)(2); (19) kidnapping, in violation of R.C. 2905.01(A)(4); (20) aggravated robbery, in violation of R.C. 2911.01(A)(1); (21) felonious assault, in violation of R.C. 2903.01(A)(2); (22) kidnapping, in violation of R.C. 2905.01(A)(2); and (23) having weapons while under disability, in violation of R.C. 2923.13(A)(2). Many of the counts carried sexually violent predator specifications, sexual motivation specifications, repeat violent offender specifications, and notice of prior conviction specifications. Counts 5 through 23 contained one- and three-year firearm specifications. At his arraignment, appellant pled not guilty to the charges in the indictment and the matter proceeded to trial on February 2, 2015.

{¶4} The trial court severed Counts 1 through 5 for separate disposition. The trial court subsequently ordered bifurcation of the notice of prior conviction, repeat violent offender, sexual motivation, and sexually violent predator specifications on Counts 5 through 8. The specifications would be tried to the trial court. Furthermore, the trial court bifurcated the following specifications: the repeat violent offender and notice of prior conviction specifications on Counts 9 and 10; the notice of prior conviction and repeat violent offender specifications on Counts 12, 13, 14, and 15; the sexual motivation,

sexually violent predator, repeat violent offender, and notice of prior conviction specifications on Counts 17, 18, and 19; and the notice of prior conviction and repeat violent offender specifications on Counts 20, 21, and 22.

{¶5} Counts 1 through 4 in the original indictment were amended and renumbered as Counts 20 through 23. Counts 5, 6, 7, 17, and 18 in the original indictment were renumbered as Counts 1, 2, 3, 11, and 12. Counts 8 and 19 in the original indictment were renumbered as Counts 4 and 13. Counts 9, 12, 14, and 20 in the original indictment were renumbered as Counts 5, 7, 9, and 14. Counts 10, 13, 15, and 22 in the original indictment were renumbered as Counts 6, 8, 10, and 16. Count 21 in the original indictment was renumbered as Count 15. Counts 11, 16, and 23 of the original indictment were not renumbered.

{¶6} On the first night of trial, appellant feigned a suicide attempt. He was found on the floor of his holding cell, in the fetal position, with a sheet wrapped around his neck. On the second day of trial, appellant spread feces on himself and his holding cell. Appellant had been diagnosed with antisocial personality disorder and bipolar disorder. After one of appellant's medications was discontinued on January 27, 2015, appellant began complaining of auditory hallucinations. For all of these reasons, the trial court discharged the jurors — who had not yet been sworn in — continued appellant's trial, and referred appellant to the court psychiatric clinic for a competency evaluation.

{¶7} On February 7, 2015, appellant filed a pro se motion to disqualify counsel.

**{¶8}** Dr. Stephen Noffsinger evaluated appellant and diagnosed him with cannabis use disorder and malingering. Dr. Noffsinger determined that appellant suffers from antisocial personality disorder. Dr. Noffsinger indicated in his report that he was unable to form an opinion within a reasonable medical certainty whether appellant has the ability to understand the nature and objectives of the proceedings and is able to assist in his defense. Dr. Noffsinger explained, "while it is clear that [appellant] is malingering the symptoms of a mental disorder, it is unclear whether he is wholesale faking the mental disorder or exaggerating the extent of a true mental disorder." He recommended that the trial court order appellant to a 20-day inpatient competency to stand trial evaluation at Twin Valley Behavioral Healthcare ("Twin Valley") — a maximum security facility where appellant's behavior could be observed "round the clock."

**{¶9}** On March 9, 2015, the trial court held a hearing to review Dr. Noffsinger's report. The trial court noted that in appellant's pro se motion to disqualify counsel, he demonstrated intelligence and clarity of thought. The trial court attempted to discuss Dr. Noffsinger's report and recommendation with appellant, but was unable to do so. The trial court noted on the record that appellant "had his head down the whole time and refused to make any eye contact. And his responses have been inaudible and not understandable to the court. They are barely audible." The trial court remanded appellant and ordered him to be transferred to Twin Valley for a 20-day observation period. Despite the trial court's order, appellant was not transferred to Twin Valley.

{¶10} On April 8, 2015, the trial court held another hearing to determine whether appellant was competent to proceed to trial. The trial court noted that appellant had at least two prior felonies, and thus, is not a stranger to the criminal justice system. The trial court acknowledged that in a prior presentence investigation report, appellant indicated that he did not suffer from any mental illness. The trial court further noted that because appellant neither cooperated with his counsel nor with the medical professionals who attempted to examine him, it is unclear whether any of the information that he is reporting is credible.

{¶11} The state argued that appellant was competent to stand trial. In support of its position, the state presented the following information obtained from appellant's jail phone calls: (1) appellant was using another inmate's corrections office number; (2) appellant was discussing information about his trial, including jury selection, the facts against him, his attorney, witnesses, an alibi, and circumstantial evidence; (3) he asked his girlfriend to look up symptoms of schizophrenia; (4) he called his brother so that he would not testify against him at trial; and (5) he reached out to Channel 5 and did an interview with a reporter.

{¶12} After hearing appellant's jail phone calls and reviewing Dr. Noffsinger's report, the trial court determined that appellant was competent to stand trial. Furthermore, the trial court stated that it was clear that appellant "is using the due process protections of the legal system to delay his inevitable trial." The matter proceeded to trial.

{¶13} At the close of trial, the jury found appellant guilty of rape with one- and three-year firearm specifications and sexual motivation specifications, as charged in the renumbered Counts 1, 2, 3, 11, and 12; kidnapping with one- and three-year firearm specifications and sexual motivation specifications, as charged in the renumbered Counts 4 and 13; aggravated robbery with one- and three-year firearm specifications, as charged in the renumbered Counts 5, 7, 9, and 14; kidnapping with one- and three-year firearm specifications, as charged in the renumbered Counts 6, 8, 10, and 16; and felonious assault with one- and three-year firearm specifications, as charged in the renumbered Count 15. Furthermore, the trial court found appellant guilty of the notice of prior conviction, repeat violent offender, and sexual violent predator specifications as charged in the renumbered Counts 1, 2, 3, 11, and 12; the notice of prior conviction, repeat violent offender, and sexual violent predator specifications as charged in the renumbered Counts 4 and 13; the repeat violent offender and notice of prior conviction specifications as charged in the renumbered Counts 5, 7, 9, and 14; the notice of prior conviction and repeat violent offender specifications as charged in the renumbered Counts 6, 8, 10, and 16; the notice of prior conviction and repeat violent offender specifications as charged in the renumbered Count 15; and having weapons while under disability with the one- and three-year firearm specifications as charged in the original indictment as Counts 11, 16, and 23. The trial court ordered appellant to be tried on the renumbered Counts 20 through 23, originally charged in the indictment as Counts 1 through 4, at a later date.

**{¶14}** Appellant changed his not guilty plea and entered a plea of guilty to the renumbered Counts 20 through 23. The trial court accepted appellant's guilty plea.

**{¶15}** The trial court sentenced appellant to a prison term of 144 years to life.

**{¶16}** Appellant filed the instant appeal assigning four errors for review:

I. The trial court erred and denied appellant his constitutional right to due process when it declared that he was competent to stand trial in the absence of any medical opinion to a reasonable degree of medical certainty to support that decision.

II. The trial court's failure to provide the jury with an instruction on attempt as to the charge of rape constituted a violation of appellant's right to a fair trial and plain error.

III. The trial court committed plain error in permitting a state's witness to vouch for the credibility of one of the alleged victims.

IV. The trial court deprived appellant of his constitutional rights to due process and a fair trial in failing to conduct a *Daubert* hearing concerning whether the analysis of historical cell phone records to determine location of an individual's phone is scientifically reliable, as requested by appellant, and simply admitting such testimony at trial.

## II. Law and Analysis

### A. Competency

**{¶17}** In his first assignment of error, appellant argues that the trial court erred by finding him competent to stand trial because he was not evaluated at Twin Valley — as ordered by the trial court and recommended by Dr. Noffsinger — and the trial court's finding was not supported by any medical evidence.

**{¶18}** A defendant who is legally incompetent may not stand trial. *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995), citing *Pate v. Robinson*, 383 U.S. 375,

86 S.Ct. 836, 15 L.Ed.2d 815   (1966), and *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct 896, 43 L.Ed.2d 103 (1975).   The conviction of an accused while he is not legally competent to stand trial violates due process of law.   *See State v. Rubenstein*, 40 Ohio App.3d 57, 60, 531 N.E.2d 732 (8th Dist.1987).

{¶19} The test for determining whether a defendant is competent to stand trial is "'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.'"   *Berry* at 359, quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).   R.C. 2945.37(G) provides that a defendant is presumed to be competent to stand trial.   The burden is on the defendant to prove by a preponderance of the evidence that he is not competent. *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, _ 28.

{¶20} A trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting those findings. *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, _ 33; *State v. Williams*, 23 Ohio St.3d 16, 19, 490 N.E.2d 906 (1986).   Deference on these issues should be given "to those who see and hear what goes on in the courtroom."   *State v. Cowans*, 87 Ohio St.3d 68, 84, 717 N.E.2d 298 (1999).

{¶21} In the instant matter, it is undisputed that the issue of appellant's competency to stand trial was raised in the trial court.   After appellant feigned a suicide attempt and smeared feces on himself and his holding cell, the trial court referred

appellant to the court psychiatric clinic for a competency evaluation. Dr. Noffsinger evaluated appellant and submitted his report to the trial court.

{¶22} The trial court held two hearings to address the issue of appellant's competency to stand trial. First, the trial court held a hearing to review Dr. Noffsinger's report and recommendation. The trial court reviewed appellant's pro se motion to disqualify counsel with defense counsel in open court and acknowledged that appellant demonstrated intelligence and clarity of thought in the motion. Furthermore, the trial court attempted to discuss Dr. Noffsinger's report and recommendation and the motion to disqualify counsel with appellant. When appellant refused to answer the trial court's questions, the trial court noted that appellant's "command of the English language was substantially clearer in the motion [to disqualify.]" The trial court ordered appellant to be transferred to Twin Valley for an evaluation. For reasons unclear to this court, appellant was neither transferred to nor evaluated by Twin Valley. Second, after learning that appellant was not transferred to Twin Valley for an evaluation, the trial court held another hearing to evaluate appellant's competency to proceed to trial. The state presented evidence of appellant's jail phone calls at the competency hearing. After hearing the state's evidence, the trial court concluded that appellant was competent to stand trial.

{¶23} Appellant emphasizes that Dr. Noffsinger was unable to form an opinion within a reasonable medical certainty about his ability to understand the nature and objectives of the proceedings and assist in his defense. Furthermore, appellant argues

that because he was not evaluated at Twin Valley, there was neither a "definitive" psychiatric evaluation nor a determination about his competency. Appellant contends that the trial court's competency finding was not supported by any medical evidence and was based solely on the testimony of a prosecutor's office investigator regarding appellant's jail phone calls. We disagree.

{¶24} After reviewing the record, we find that the trial court complied with R.C. 2945.37 in determining whether appellant was competent to stand trial. Furthermore, we find that the trial court's competency determination is supported by reliable and credible evidence. The trial court's finding was based on (1) Dr. Noffsinger's report, (2) the trial court's review of appellant's motion to disqualify counsel, (3) the fact that appellant was uncooperative with defense counsel, the medical professionals who sought to evaluate him, and the trial court during the first competency hearing, (4) the state's evidence of appellant's jail phone calls and the testimony of the prosecutor's office investigator, and (5) the trial court's own observations of appellant. Thus, reliable and credible evidence supports the trial court's decision, and the trial court did not abuse its discretion in finding that appellant was competent to stand trial.

{¶25} Appellant's outrageous behavior, as displayed by the feigned suicide attempt and the feces incident, does not undermine the trial court's finding of his competence to stand trial. *Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, at _ 25-29. In *State v. Block*, 28 Ohio St.3d 108, 502 N.E.2d 1016 (1986), the Ohio Supreme Court noted that "[i]ncompetency must not be equated with mere mental or emotional instability

or even outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Id*. at 110. In light of the aptitude and intuition that appellant demonstrated in his motion to disqualify counsel and the jail phone calls during which he discussed his case in detail, the trial court reasonably determined that despite his outlandish conduct, appellant had the present ability to consult with his lawyer and a sufficient understanding of the proceedings against him.

{¶26} Accordingly, appellant's first assignment of error is overruled.

## B. Attempted Rape Instruction

{¶27} In his second assignment of error, appellant argues that the trial court's failure to provide an attempted rape instruction to the jury violated his constitutional right to a fair trial. Specifically, appellant argues that he was entitled to an instruction on the attempt statute, R.C. 2923.02, for the offense of anally raping S.N. because she provided conflicting accounts of the incident.

{¶28} We initially note that defense counsel neither requested an attempted rape jury instruction nor objected to the jury instructions in the trial court. Accordingly, appellant has waived all but plain error. *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 15.

{¶29} Under Crim.R. 52(B), a plain error affecting a substantial right may be noticed by an appellate court even though it was not brought to the attention of the trial court. However, an error rises to the level of plain error only if, but for the error, the

outcome of the proceedings would have been different. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id*.

{¶30} This court reviews a trial court's decision on jury instructions for an abuse of discretion. *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 33. Jury instructions are reviewed in their entirety to determine if they contain prejudicial error. *State v. Fields*, 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist.1984).

{¶31} In the instant matter, appellant was charged with anally raping S.N. in violation of R.C. 2907.02. R.C. 2907.02(A)(2) states, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct is defined in R.C. 2907.01(A) as

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶32} The crime of attempted rape is a lesser included offense of rape. *See State v. Williams*, 74 Ohio St.3d 569, 578, 660 N.E.2d 724 (1996). Ohio's general attempt statute states, "[n]o person, purposely or knowingly, * * * shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). The fact that an offense is a lesser included one of a greater offense does not automatically entitle a

defendant to a lesser included offense instruction. *State v. Smith*, 8th Dist. Cuyahoga No. 91715, 2010-Ohio-1655, ¶ 25.

**{¶33}** A jury instruction on a lesser included offense is required only when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *Id.*, citing *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus. An instruction is not warranted when "some evidence" on the lesser included offense is presented. *State v. Shane*, 63 Ohio St.3d 630, 633, 590 N.E.2d 272 (1992). "To require an instruction * * * every time some evidence, however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." *Id.* at 633.

**{¶34}** Appellant argues that he was entitled to a lesser included instruction on attempted rape because S.N. provided conflicting accounts of whether she had been anally penetrated.

**{¶35}** S.N. testified that her normal morning routine consisted of walking, running, and stopping at a coffee shop before going to work. S.N. testified that she was attacked during her morning routine by an unknown male on September 2, 2014. She testified that the attacker struck her head, knocked her to the ground, and held a gun to her head. She testified that her attacker pulled out a condom and told her that her options were to engage in oral, anal, or vaginal sex. She testified that her attacker pulled her hair,

pushed her head down on his penis, and forced his penis into her mouth. She testified that her attacker continued to strike her with his fist and his gun. She testified that her attacker proceeded to push her against a wall, pull down her shorts, and penetrate her anally with his penis. She testified that she does not believe that her attacker "got all the way in[,]" and that it "ended pretty quickly." She testified that her attacker took her iPod and left the scene. She testified that she ran down Clifton Boulevard and informed a man at a bus stop that she had just been attacked.

**{¶36}** Appellant contends that S.N. reported that her attacker "tried penetrating [her] from behind, barely penetrated, if anything?" However, S.N. explained, "No, not 'if anything.' He penetrated. He didn't get all the way inside." S.N. further clarified, "He stopped before he was able to fully penetrate me anally[.]"

**{¶37}** In addition to S.N.'s testimony, the state presented the testimony of the following witnesses who interacted with S.N. following her attack: (1) the man at the bus stop, (2) Lucas Hastings, (3) Elizabeth Booth, and (4) Detective Michael Moctezuma.

**{¶38}** First, the man at the bus stop who S.N. informed about the attack testified that S.N. was "frantic" and was "hollering for help." He testified that S.N. told him that somebody "hit her in the eye" and "had beat her up." He testified that he told S.N. to sit down and he called 911. He testified that S.N. "was crying, she was upset. She was really upset." Appellant emphasizes that the man at the bus stop testified that S.N. "seemed only 'upset.'"

**{¶39}** Second, Lucas Hastings, an emergency medical technician ("EMT") with the city of Cleveland, testified that he responded to the call regarding S.N.'s attack. Hastings testified that he spoke with S.N. after responding to the scene. Hastings testified that S.N. pulled him to the side of the ambulance, away from the crowd, and indicated that although she told people in the crowd that she had been attacked, she had actually been raped and robbed as well. Hastings testified that S.N. said that her eye was hurt and that she had been struck in the face with a gun. Hastings testified that S.N. seemed "kind of nervous," appeared to be in shock, and "was kind of at a loss of words." Appellant emphasizes that Hastings's report noted that S.N.'s attacker only "tried to have sex with her." However, Hastings's report also noted that S.N.'s attacker raped her and used a condom.

**{¶40}** Third, Elizabeth Booth, a registered nurse at MetroHealth Medical Center ("MetroHealth") in Cleveland, Ohio, testified that she treated S.N. on September 2, 2014. Booth testified that she provided S.N. with medications to treat sexually transmitted diseases and HIV that she possibly could have obtained and pregnancy. Booth testified that she performed a rape kit examination on S.N. Booth testified that S.N. told her that she was forced to perform oral sex on her attacker and that her attacker "tr[ied] to penetrate her anally, which he was able to partially." Booth testified that S.N. informed her that her attacker wore a condom. Booth testified that S.N.'s demeanor throughout the examination was "mixed," explaining:

> [S.N. was] [v]ery angry that [the attack] happened to her. She was upset. Said she took precautions, she wasn't listening to music, she was paying

attention to her surroundings, this came out of nowhere. She thought she was in a nice area, that she was safe, so she was very upset that happened to her. Then she was worried about possible injuries to her face that she had.

Booth read a physician's narrative of the incident, based on S.N.'s description, from S.N.'s medical records. Appellant emphasizes that the narrative provided, in relevant part, "assailant attempted to rape [S.N.] [S.N.] states that [her attacker] put on a condom and tried penetrating her from behind, but probably only briefly penetrated her anus, if anything." However, the narrative also noted that S.N. told the nurse that she had been anally penetrated, and that S.N. clarified that the penetration was partial.

{¶41} Fourth, Detective Michael Moctezuma of the Cleveland Police Department testified that he was working in the sex crimes unit on September 2, 2014. Detective Moctezuma testified that S.N. provided him with a brief statement of the attack on the morning of September 2, 2014, at MetroHealth. He testified that he subsequently conducted a lengthy interview of S.N. on September 4, 2014, at the sex crimes unit. He testified that he took notes during this interview. Appellant emphasizes that Detective Moctezuma testified that the attacker put on a condom and attempted to anally penetrate S.N. However, Detective Moctezuma testified that S.N. told him that her attacker wore a condom during the anal sex.

{¶42} After reviewing the record and the testimony regarding S.N.'s attack, we find that the trial court's failure to provide an attempted rape instruction did not rise to the level of plain error. S.N. consistently testified that appellant anally penetrated her. Furthermore, the witnesses who interacted with S.N. after the attack consistently testified

that S.N. reported that she had been anally raped during the attack. This testimony could not have supported both an acquittal of rape and a conviction on the lesser-included offense of attempted rape. The jury could not have inferred anything less than penetration from S.N.'s testimony that appellant anally penetrated her with his penis. Under the R.C. 2907.01(A) definition of sexual conduct, "[p]enetration, *however slight*, is sufficient to complete vaginal or anal intercourse." (Emphasis added.) Thus, even though S.N. testified that the penetration was only "partial," and that appellant was not able to fully penetrate her, the attempted rape instruction was not warranted by the evidence.

**{¶43}** Finally, we note that an attempted rape instruction is not consistent with appellant's theory of the case at trial. Appellant's theory of the case at trial was that other perpetrators may have been involved in the attacks. During closing arguments, appellant's counsel suggested that the state's theory of the case — that a single man attacked S.N. — was wrong.

**{¶44}** "In a case in which there is a conflict in the testimony and the defendant has a reasonable hope that the jury will believe his evidence and return a verdict of not guilty, it is a matter of trial strategy whether to seek to have the jury instructed concerning a lesser offense, or not to seek such an instruction and to hope for an acquittal." *State v. Catlin*, 56 Ohio App.3d 75, 78-79, 564 N.E.2d 750 (2d Dist.1990), citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980). In *State v. Smith*, 8th Dist. Cuyahoga No. 90478, 2009-Ohio-2244, this court held that defense counsel's failure to request jury

instructions on the lesser-included offenses of voluntary manslaughter and aggravated assault did not constitute ineffective assistance because (1) the trial testimony did not support a request for the instructions, and (2) counsel chose to pursue a self-defense theory. *Id*. at _ 17.

**{¶45}** In the instant matter, an attempted rape jury instruction would have been inconsistent with both the trial testimony and appellant's theory of defense. Appellant's decision to challenge the state's theory that a single man attacked S.N., rather than presenting the theory that appellant only committed the lesser-included offense of attempted rape, was a reasonable trial strategy. Thus, appellant cannot demonstrate that he was prejudiced by the trial court's failure to provide the jury with an attempted rape instruction.

**{¶46}** Based on the foregoing analysis, the trial court neither abused its discretion nor committed plain error by failing to provide an attempted rape jury instruction. Appellant's second assignment of error is overruled.

### C. Officer Kazimer's Testimony

**{¶47}** In his third assignment of error, appellant argues that the trial court committed plain error by permitting Cleveland police officer John Kazimer to "vouch for the credibility of one of the alleged victims." Appellant did not object to Officer Kazimer's trial testimony. Thus, we review this claim for plain error.

**{¶48}** It is reversible error to admit testimony from a purported expert or lay witness attesting to the believability of another's statements. *State v. Boston*, 46 Ohio

St.3d 108, 128, 545 N.E.2d 1220 (1989). "[I]n our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." *State v. Pizzillo*, 7th Dist. Carroll No. 746, 2002 Ohio App. LEXIS 162, 15 (Jan. 17, 2002), citing *Boston* at 129.

{¶49} In the instant matter, the testimony in question occurred when Officer Kazimer was discussing his post-attack interview of S.N. When asked why he was trying to gather information from S.N. during the interview, Officer Kazimer stated, "I had every reason to believe that [S.N.] was making true statements about a crime that had been committed against her in the city where I am sworn to protect and uphold the law." Appellant argues that Officer Kazimer's statement infringed upon the jury's role of making veracity and credibility determinations.

{¶50} The state argues that Officer Kazimer's statement was not impermissible because he was testifying about S.N.'s post-attack demeanor and behavior — not about S.N.'s credibility or the reliability or believability of S.N.'s statements. We agree.

{¶51} When read in the context of Officer Kazimer's entire testimony, we do not find that he was offering an opinion as to the truthfulness of S.N.'s accusations. Instead, Officer Kazimer was essentially explaining that, based on his experience, S.N.'s demeanor during the interview was consistent with the demeanor of a person who had just been sexually assaulted. Prior to the disputed statement, Officer Kazimer testified that S.N. appeared to be angry and frustrated during the interview. Officer Kazimer testified, "[s]he was angry at what had happened to her," and, "she kept saying she was sorry, sorry

to waste our time * * *. She just, her demeanor, kind of sitting forward, just like 'I can't believe this happened,' frustration."

{¶52} Appellant further argues that Officer Kazimer's statement about S.N. was even more prejudicial because he is a police officer. In support of his argument, appellant directs this court to *State v. Huff*, 145 Ohio App.3d 555, 763 N.E.2d 695 (1st Dist.2001).

{¶53} In *Huff*, a detective testified at trial about the victims' credibility. *Id.* at 561. The detective testified that he "absolutely" found that the victims were credible and that they were telling the truth. *Id.* On appeal, the First District described the case as a "credibility contest between the victims and their identification of Huff as the shooter and Huff and his alibi witness." *Id.* The court held that the detective's opinion testimony "acted as a litmus test of the key issue in the case and infringed upon the role of the fact finder, who is charged with making determinations of veracity and credibility." *Id.*, quoting *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988). Furthermore, the court found that the fact that the "vouching [witness]" was a police officer further exacerbated the problem. *Id.* The court explained, "[j]urors are likely to perceive police officers as expert witnesses, especially when such officers are giving opinions about the present case based upon their previous experiences with other cases." *Id.*, quoting *State v. Miller*, 2d Dist. Montgomery No. 18102, 2001 Ohio App. LEXIS 230, 14 (Jan. 26, 2001).

**{¶54}** In *Miller*, two police officers offered opinions regarding the truth of the victim's accusations. The Second District held that the officers' testimony violated *Boston*:

> their testimonies declared that [the victim's] statements were truthful and that [the defendant] had committed the alleged acts against her. As such, [the officers] infringed upon the role of the jury which, as the fact finder, was charged with assessing the veracity and credibility of [the victim and the defendant].

*Id*. at 15. Although, the court found that it was improper to admit the officers' testimony regarding the truthfulness of the victim, the court held that the admission was harmless error in light of the independent evidence of the crimes. *Id*. at 18-19.

**{¶55}** In *Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220, the three-year-old sexual assault victim was unavailable to testify at trial. The issue before the Ohio Supreme Court was whether the victim-child's doctor and psychologist could testify about the child's out-of-court statements regarding the abuse. The court held that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *Id*. at syllabus. The court emphasized that the admission of such testimony was not only improper, but was egregious, prejudicial, and constituted reversible error. *Id*. at 128.

**{¶56}** In the instant matter, unlike *Boston*, S.N. testified before the jury at trial. Furthermore, unlike *Huff* and *Miller*, we find that Officer Kazimer was testifying about S.N.'s post-attack demeanor and behavior — not about her credibility or the truthfulness

of her testimony or accusations. Thus, even though the statement in question was made by a police officer, we cannot say that it was inadmissible.

{¶57} Assuming, arguendo, that the trial court erred by admitting Officer Kazimer's statement, appellant cannot demonstrate that but for the error, the outcome of the proceedings would have been different. S.N. testified before Officer Kazimer. Accordingly, before the jury heard the statement in question, the jury had an opportunity to hear S.N.'s testimony, view her demeanor, and assess her credibility.

{¶58} Based on the foregoing analysis, we cannot say that the trial court committed plain error by admitting Officer Kazimer's statement. Appellant's third assignment of error is overruled.

### D. Wiles's Testimony

{¶59} In his fourth assignment of error, appellant argues that the trial court's failure to hold a *Daubert* hearing to determine the reliability of Todd Wiles's testimony regarding cell phone sector data deprived him of his constitutional rights to due process and a fair trial. Specifically, appellant contends that Wiles's testimony was inadmissible under Evid.R. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), because interpreting cell phone sector data is not within a layperson's knowledge or experience, and the data and methodology that Wiles's relied upon in rendering his opinion is unreliable.

{¶60} We initially note that appellant's reliance on Evid.R. 702 and *Daubert* is misplaced. The trial court did not recognize Wiles as an expert witness. Furthermore,

we note that the parties stipulated that the information in the cell phone records provided by appellant's carrier was authentic.

**{¶61}** The admission or exclusion of evidence is a matter left to the trial court's sound discretion and will not be disturbed absent an abuse of discretion. *State v. Dunn*, 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138, ¶ 40. An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶62}** Wiles is a civilian crime analyst for the Cleveland Police Department. Wiles has worked as a crime analyst for ten years: he worked in Jacksonville, Florida for four years and was hired by the Cleveland Police Department in 2009. Wiles is currently a "crime analyst 3." He explained that his unit is in charge of "analyzing data for the police department in computer databases" and "doing all the geographic information system mapping for the police department." Wiles has a bachelor's and master's degree in criminal justice and computer science. Wiles testified that he has worked on "at least a hundred cell phone cases" over the past five years. Wiles testified in detail about the process by which he determines the location from which a person placed a phone call by reviewing the person's cell phone records.

**{¶63}** In the instant matter, the state introduced Wiles's testimony for two purposes: (1) to show that appellant was in the area where the Cleveland rape was committed, and (2) to demonstrate how investigators ultimately discovered appellant's identity in this case through his brother's cell phone. Wiles explained that he takes the

information from a person's cell phone records and creates a map. Wiles testified that the map allows him to see "where a person was when they were completing cellular telephone calls." Wiles testified that he used this process to generate a map of the location of appellant's phone based on the phone records that he received. During trial, defense counsel objected to Wiles's testimony, arguing that his testimony was not based on proven scientific methods, his methods have not been scientifically verified, and that his testimony is speculative at best.

{¶64} The state opposed defense counsel's objection, arguing that Wiles's testimony should not be subjected to a *Daubert* analysis because the state was not putting forth any expert testimony and the cell phone technology that Wiles's testified about is well established. The state argued that although Wiles has a high level of expertise, a high degree of expertise is not required to generate a map based on a person's cell phone records.

{¶65} The trial court was not inclined to subject Wiles's testimony to a *Daubert* analysis:

> cell phone technology, while relatively new in the history of mankind, has been around for 30 years now and brings with it cell phone towers and triangulation, and the matters have become common scientifically. At first glance, the [c]ourt does not look at this as some new scientific area that needs to be tested using *Daubert* principles.

Accordingly, the trial court overruled defense counsel's objection to Wiles's testimony and noted that the defense would have "free reign" to cross-examine him.

**{¶66}** Appellant directs this court to *United States v. Evans*, 892 F.Supp.2d 949 (N.D.Ill.2012). In *Evans*, the prosecution sought to call an FBI special agent to testify about "the operation of cellular networks and how to use historical cell site data to determine the general location of a cell phone at the time of a particular call." *Id*. at 951. The agent used the "granulization" theory and proposed to testify that phone calls placed from the defendant's cell phone could have come from the building where the victim was held for ransom. *Id*. The trial court held an evidentiary hearing, pursuant to Evid.R. 702 and *Daubert*, to determine whether the proposed evidence and analysis were admissible. In determining the admissibility of the proposed testimony, the trial court distinguished lay witness testimony from expert testimony:

> Lay witness testimony is admissible under Rule 701 when it is "rationally based on [a] witness's perception" or based on "a process of reasoning familiar in everyday life." * * * Understanding how the aforementioned factors affect a cell phone's ability to connect a particular tower, however, cannot be said to be within the perception of the untrained layman. Rather, this type of understanding demands "scientific, technical, or other specialized knowledge" of cellular networks and "results from a process of reasoning which can be mastered only by specialists in the field." * * * [The special agent] may therefore provide lay opinion testimony concerning (1) the call data records obtained for [defendant's] phone and (2) the location of cell towers used by [defendant's] phone in relation to other locations relevant to the crime; but if [the agent] wishes to testify concerning (1) how cellular networks operate, i.e., the process by which a cell phone connects to a given tower or (2) granulization theory he must first meet the demands of Rule 702 and *Daubert*.

*Id*. at 953-954.

**{¶67}** The trial court concluded that the special agent is qualified to testify as an expert regarding the operation of cellular networks and the "granulization" theory. *Id*. at

955. The court further concluded that the agent's testimony on the subject is reliable. *Id*. However, the court held that the agent's "granulization" theory was not reliable because (1) the agent did not account for the factors that can affect whether a cell phone connects to the closest tower or is rerouted to another tower, and (2) the theory has not been subject to scientific testing or formal peer review, and has not gained general acceptance in the scientific community. *Id*. at 956.

{¶68} In *Dunn*, 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138, a criminal intelligence analyst testified about a map she created based on information from the defendant's cell phone records. *Id*. at ¶ 37. The analyst identified the cellular towers on the map that were "hit" by the defendant's cell phone. *Id*. On appeal, this court held that the trial court did not abuse its discretion by allowing the analyst's testimony because "a layperson could compare the locations depicted on the [phone] records to the corresponding location on the [analyst's] site map." *Id*. at ¶ 44, citing *State v. Perry*, 11th Dist. Lake No. 2011-L-125, 2012-Ohio-4888, ¶ 65.

{¶69} In the instant matter, Wiles's testimony concerned (1) appellant's cell phone records, and (2) the location of the cellular towers used by appellant's phone in relation to other locations relevant to the crime. As the *Evans* and *Dunn* courts explained, this testimony is lay opinion testimony that does not require "specialized knowledge, skill, experience, training, or education" regarding cellular networks. Evid.R. 702(B). Thus, Wiles's testimony is not subject to an Evid.R. 702 and *Daubert* analysis.

**{¶70}** On cross-examination, Wiles testified about the potential problems with estimating a cell phone's location based on phone records. Wiles testified that cell phones usually connect to the closest cellular tower and that there are "small anomalies that would cause [the phone] to [connect] to a different tower." Wiles explained that a phone call can be rerouted to a different cellular tower if there is bad weather, damage to a cellular tower, the cellular tower is at full capacity, or if a cell phone is "roaming" or has no signal. These potential problems go to the weight of Wiles's testimony — not to the reliability or admissibility of the testimony. *See State v. White*, 2d Dist. Montgomery No. 26093, 2015-Ohio-3512, ¶ 28.

**{¶71}** The *Evans* court explained that testimony concerning "how cellular networks operate" or "the process by which a cell phone connects to a given tower" is not within the knowledge or experience of a lay witness. *Evans* at 954. Although Wiles testified about these matters, his testimony was in direct response to defense counsel's inquiries on cross-examination. The doctrine of invited error holds that a litigant may not "take advantage of an error which he himself invited or induced." *State v. Campbell*, 90 Ohio St.3d 320, 738 N.E.2d 1178 (2000). Accordingly, even if Wiles's testimony on cross-examination went beyond a lay witness's knowledge and experience, appellant cannot now complain of the testimony that defense counsel elicited at trial.

**{¶72}** Based on the foregoing analysis, we cannot say that the trial court abused its discretion by admitting Wiles's testimony. Appellant's fourth assignment of error is overruled.

## III. Conclusion

**{¶73}** After a thorough review of the record and law, we affirm the trial court's judgment. First, the trial court complied with R.C. 2945.37 in determining whether appellant was competent to stand trial, and trial court's competency determination is supported by reliable and credible evidence. Second, the trial court neither abused its discretion nor committed plain error by failing to provide an attempted rape jury instruction. An attempted rape jury instruction would have been inconsistent with both the trial testimony and appellant's theory of defense. Third, the trial court did not commit plain error by admitting Officer Kazimer's statement. When read in the context of Officer Kazimer's entire testimony, the statement in question pertained to S.N.'s post-attack demeanor and behavior, not her credibility or the truthfulness of her testimony or accusations. Furthermore, the jury had the opportunity to hear S.N.'s testimony and assess her credibility prior to Officer Kazimer's statement. Thus, appellant cannot demonstrate that but for the admission of the statement, the outcome of the proceedings would have been different. Fourth, the trial court did not abuse its discretion by admitting Wiles's testimony. The trial court was not required to conduct an Evid.R. 702 and *Daubert* analysis before admitting Wiles's testimony regarding appellant's cell phone records and the location of the cellular towers used by appellant's phone.

**{¶74}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

LARRY A. JONES, SR., A.J., CONCURS;
MARY J. BOYLE, J., DISSENTS (WITH SEPARATE OPINION ATTACHED)

MARY J. BOYLE, J., DISSENTING:

**{¶75}** I respectfully dissent.

**{¶76}** R.C. 2945.37 protects a defendant's right not to be tried or convicted while incompetent, which is a fundamental due process right. *State v. Were*, 94 Ohio St.3d 173, 174, 2002-Ohio-481, 761 N.E.2d 591.

**{¶77}** This case presents a unique set of facts. Here, after it became clear that Daniel's competency was at issue, the trial court properly referred Daniel for a competency evaluation and then held a hearing after receiving the expert report of Dr. Stephen Noffsinger, psychiatrist with the court psychiatric clinic. At the hearing on March 9, 2015, the parties stipulated to the findings contained in Dr. Noffsinger's report, which recommended that Daniel should "be hospitalized for a 20-day inpatient

competence to stand trial evaluation at the maximum security facility at Twin Valley Behavioral Healthcare in Columbus, Ohio." The trial court accepted the parties' stipulations and accordingly ordered Daniel to Twin Valley Behavioral Healthcare for an inpatient competency evaluation pursuant to R.C. 2945.371(C) and (D).

{¶78} As the majority notes, for reasons unknown to the court, this order was not followed. But rather than bring this error to the trial court's attention, the state appears to have seized the opportunity to collect further evidence as to Daniel's competency in lieu of the opinions of trained experts at Twin Valley Behavioral Healthcare. I find that Daniel's "fundamental due process rights" were violated when the trial court vacated its earlier order to transport Daniel for further observation and to obtain an inpatient competency evaluation. The record does not support the trial court's decision to vacate this order. Given the stakes at issue and the parties' stipulation to Dr. Noffsinger's report, I do not believe that the process should have been cut short simply to expedite the trial.

{¶79} I also do not find that the telephone calls recorded and offered into evidence by the state constitute competent, credible evidence to support the trial court's finding. While both the state and trial court found it significant that Daniel used another inmate's pin number to make these calls in an attempt to avoid detection, I do not. The substance of the telephone calls still raises concerns with Daniel's competency. As noted by defense counsel, Daniel expressed confusion during one of the telephone calls and also made incorrect statements about the legal proceedings — all of which supports the

defense's position that Daniel is "not fully competent, not fully capable of assisting" in his own defense.

**{¶80}** Moreover, the complexity of mental illness is not always apparent to untrained professionals. As this writer has previously recognized, "'One can be intelligent * * * yet still have underlying psychiatric and emotional problems which cause incompetence. Simply having the capacity for rational understanding in the abstract is not sufficient if psychiatric or emotional problems prevent applying rational faculties to the problem.'" *State v. Halder*, 8th Dist. Cuyahoga No. 87974, 2007-Ohio-5940, ¶ 113 (dissenting opinion), quoting James A. Cohen, *The Attorney-Client Privilege*, *Ethical Rules*, *and the Impaired Criminal Defendant*, U.Miami L.Rev. 529, 543 (1998).

**{¶81}** While I appreciate the discretion afforded the trial court in deciding whether a defendant is competent to stand trial, I find that the trial court abused its discretion in failing to enforce its previously issued order. The hearing held on March 9, 2015, demonstrated that Daniel's competency was clearly at issue. As noted in Dr. Noffsinger's report and stipulated by all the parties, more testing by trained experts was needed to ascertain whether Daniel was competent to stand trial. The state's evidence of Daniel's telephone calls does not sufficiently fill in this gap to support the trial court's finding of competency; nor did it justify shortcutting the process, especially given the due process rights at issue.

**{¶82}** Accordingly, I would sustain the first assignment of error and remand for further proceedings.